420 So.2d 882 (1982)
CHICAGO INSURANCE COMPANY, Appellant,
v.
Jose C. DOMINGUEZ, M.D.; Associated Insurers, Inc.; Pennsylvania National Mutual Casualty Insurance Company; and Travelers Indemnity Company, Appellees.
No. 81-2185.
District Court of Appeal of Florida, Second District.
September 22, 1982.
Rehearing Denied October 25, 1982.
Richard W. Driscoll of Miller, McKendree & Somers, Tampa, for appellant.
Richard A. Bokor, Tampa, for appellee Jose C. Dominguez, M.D.
Thomas J. Roehn of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellees Associated Insurers, Inc. and Pennsylvania Nat. Mut. Cas. Ins. Co.
Charles P. Schropp of Shackleford, Farrior, Stallings & Evans, P.A., Tampa, for appellee Travelers Indem. Co.
GRIMES, Judge.
This appeal involves the extent of appellant's exposure for uninsured motorist coverage under an umbrella policy of liability insurance.
While occupying a 1976 Lincoln Continental, appellee Jose C. Dominguez (Dominguez) was injured in an accident on August 11, 1976. Three insurance policies provided Dominguez with uninsured motorist coverage. Appellee Travelers Insurance Company (Travelers) afforded $100,000 uninsured motorist coverage under a policy issued to Dominguez's professional association which specifically covered the Continental. Appellee Pennsylvania National Mutual Casualty Insurance Company (Penn) had issued a family combination automobile policy covering Dominguez's 1975 Cadillac with liability limits of $100,000/$300,000 and $15,000/$30,000 of uninsured motorist coverage. The third policy, issued by appellant Chicago Insurance Company (Chicago), was a *883 professional comprehensive personal catastrophe policy which was written as an umbrella liability policy over the Travelers policy with liability coverage of $1,000,000 and uninsured motorist coverage of $25,000.
Dominguez brought a suit for declaratory relief against Chicago seeking a determination that the Chicago policy afforded him $1,000,000 of uninsured motorist coverage. Travelers intervened in support of Dominguez's position and further argued that Chicago was proportionately responsible with Travelers for the payment of uninsured motorist benefits to Dominguez. In another lawsuit, Dominguez had successfully obtained a finding of fact that Penn was obligated for $100,000 uninsured motorist coverage pursuant to section 627.727, Florida Statutes (1975), because Dominguez had not specifically rejected uninsured motorist limits equivalent to his liability coverage. As a consequence, when that lawsuit was consolidated with Dominguez's action against Chicago, Penn took a position similar to Travelers with respect to the Chicago coverage.
The court ultimately ruled that Dominguez had $1,000,000 of uninsured motorist coverage under the Chicago policy because Chicago had not obtained from Dominguez a written rejection of uninsured motorist limits in the face amount of the policy. The court also ruled that the three companies collectively afforded Dominguez $1,200,000 in uninsured motorist coverage and directed them to pay any uninsured motorist award in the proportion that the limits of their respective policies bore to the total coverage.
Chicago contends that (1) the court erred in finding it responsible for more than $25,000 in uninsured motorist coverage, and that (2) even if it is responsible for $1,000,000 of uninsured motorist coverage, this coverage should be deemed excess over the first $200,000 of coverage provided by Penn and Travelers. There are no cross-appeals.
Section 627.727 has been consistently interpreted to mean that an insured is entitled to uninsured motorist coverage equal to the limits of his motor vehicle liability coverage unless he makes an affirmative and informed rejection of such coverage. Travelers Insurance Co. v. Spencer, 397 So.2d 358 (Fla. 1st DCA 1981); Lumbermen's Mutual Casualty Co. v. Beaver, 355 So.2d 441 (Fla. 4th DCA 1978). Chicago does not attempt to argue that Dominguez rejected the higher limits of uninsured motorist coverage but suggests that such a rejection should not be required in the case of umbrella policies. It may be that those companies in the business of writing umbrella policies have not fully appreciated the necessity for obtaining a rejection of the higher limits. However, these policies do provide coverage which includes liability for motor vehicle accidents, and the statute delineates no exceptions. Thus, we follow our sister courts in holding that even an umbrella insurer must afford uninsured motorist coverage equivalent to the liability limits in the absence of an informed rejection by the insured. Cohen v. American Home Assurance Co., 367 So.2d 677 (Fla. 3d DCA 1979); Aetna Casualty & Surety Co. v. Fulton, 362 So.2d 364 (Fla. 4th DCA 1978); Aetna Casualty & Surety Co. v. Green, 327 So.2d 65 (Fla. 1st DCA 1976).
The more difficult question concerns the relationship between Chicago's policy and the policies of Penn and Travelers. The pertinent provisions of the Chicago policy read as follows:
1. COVERAGE
Subject to the applicable provisions of this policy and all the terms, exclusions and limitations of this Section,
... .
(B) UNINSURED MOTORISTS
The Company agrees to pay all sums up to $25,000 less the amount of the RETAINED LIMIT which the INSURED or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile or an UNDERINSURED AUTOMOBILE, provided
(1) The Company's liability hereunder shall be only in excess of the RETAINED LIMIT, and

*884 (2) coverage hereunder for loss involving such uninsured or UNDERINSURED AUTOMOBILE shall apply only in accordance with the terms and conditions of underlying Uninsured Motorists insurance afforded to the INSURED at the time of loss, or in the absence thereof, Uninsured Motorists insurance afforded to the INSURED as of the effective date of this policy.
... .
4. RETAINED LIMIT  LIMIT OF LIABILITY
... .
B. As respects Coverage 1(b) the Company's liability shall be only for loss in excess of the INSURED's RETAINED LIMIT defined as the greater of:
(1) the total amount of insurance collectible by or payable to the INSURED under other Uninsured Motorists, Underinsured Motorists or Auto Liability insurance; or
(2) the minimum amount specified by the financial responsibility laws of the state in which the accident shall occur; and then up to an amount not exceeding $25,000 as the result of injuries sustained by any one accident, provided, such liability shall be reduced by the amount of the RETAINED LIMIT.
The Chicago policy conditioned its uninsured motorist coverage upon the maintenance of the underlying $100,000 coverage provided by Travelers. Thus, under the terms of the Chicago policy, it came into effect only when the underlying limits of at least one other insurance policy had been exhausted. This differs from policies which afford primary coverage but contain escape or other insurance clauses which may become applicable only in the event of other coverage.
The trial court recognized the unfairness of making Chicago proportionately liable with the other companies on a first dollar basis but felt constrained to do so by the rationale of Sellers v. United States Fidelity & Guaranty Co., 185 So.2d 689 (Fla. 1966). In that case, our supreme court held that where two policies provide uninsured motorist coverage for an accident, any "other insurance," "excess-escape" or "pro rata" clauses in the policies would be deemed invalid so that the insurers would be responsible for paying uninsured motorist benefits in proportion to their respective limits. The court later amplified this ruling in Allstate Insurance Co. v. Dairyland Insurance Co., 271 So.2d 457 (Fla. 1972). Significantly, however, all of the policies under consideration in Sellers and Dairyland offered primary coverage, although each of them no doubt contained some form of excess or other insurance clause. Neither case involved an umbrella policy.
The purpose of an umbrella policy, which insures against all forms of personal liability, is to protect an insured from the consequences of a catastrophic accident. It provides extraordinarily high limits for a relatively modest premium. Its actuarial soundness depends upon the fact that it is designed only to come into play after the exhaustion of certain underlying insurance coverage. It was not originally contemplated that umbrella policies would be written with abnormally high uninsured motorist limits. However, since the law now requires umbrella insurers to offer such coverage, the underwriting principles ought to parallel those applicable to liability coverage.
We do not interpret Sellers or Dairyland as requiring an umbrella insurer to prorate its payments of uninsured motorist benefits on a first dollar basis with primary carriers which afford uninsured motorist coverage on the same accident. The public policy considerations which may have influenced the result in those cases simply do not exist here. The insured remains totally protected with the same amount of coverage. The only difference is that the umbrella policy provides the second level of coverage, which is all that was ever contemplated.
Penn has a slightly better argument than Travelers because the Chicago policy designated only the Travelers policy as the *885 underlying carrier. Thus, Penn can argue that its relationship to Chicago is more like that of the competing carriers in Sellers and Dairyland. Yet, Sellers and Dairyland unmistakably require Penn and Travelers to participate ratably for their combined coverage of $200,000. Therefore, in order to preserve the umbrella status of Chicago, we hold that its coverage does not come into play until the entire $200,000 provided by Penn and Travelers has been exhausted. See Allstate Insurance Co. v. Employers Liability Assurance Corp., 445 F.2d 1278 (5th Cir.1971), in which the court reached a similar conclusion in a liability context by examining the character of an umbrella policy.
We reverse the judgment insofar as it requires Chicago to participate proportionately in the uninsured motorist coverage on a first dollar basis. Otherwise, the judgment is affirmed.
OTT, C.J., and HOBSON, J., concur.