DELL, Judge.
Appellee Virginia Mazzara suffered personal injuries while riding as a passenger in a vehicle operated by Ernesto Garcia. Garcia’s carrier, Allstate Insurance Company (Allstate), paid $10,000 to the Mazzaras. The Mazzaras had primary underinsured motorist coverage up to $10,000 with appel-lee, Lumbermen’s Mutual Casualty Company (Lumbermen’s), and excess underin-sured motorist coverage from $10,000 to $100,000 with appellant, Chicago Insurance Company (Chicago). A dispute arose between the Mazzaras and Chicago concerning the uninsured motorist coverage, and Mazzaras filed suit. Chicago answered, cross-claimed against Lumbermen’s seeking declaratory relief, and claimed entitlement to a setoff for the $10,000 paid to the Mazzaras by Allstate. Lumbermen’s moved for judgment on the pleadings based on the statute of limitations. The trial court denied Lumbermen’s motion, entered a final judgment entitling Lumbermen’s to the $10,000 setoff, and determined that Chicago had $90,000 in uninsured motorist benefits available to the Mazzaras. We affirm.
Simply stated, appellant asks us to decide that an excess underinsured motorist carrier, rather than the primary underin-sured motorist carrier, should receive the credit or setoff for recoveries by the insured from a tortfeasor’s insurance coverage. Appellant argues that an insurance policy is a contract whose terms should be strictly construed, and that a strict construction of the policy language would entitle it to a setoff for the amount paid by Allstate to the Mazzaras. This argument would provide a simple solution except for the presence of competing insurance provisions that equally support the respective position of each of the carriers involved in this appeal. Chicago’s policy provides:
“Loss” means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the insured is legally liable, after making deductions for all recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy.
Lumbermen’s primary policy provides:
Limits of Liability
[[Image here]]
(b) Any amount payable under the terms of this Part because of bodily injury sustained in an accident by a person *918 who is an insured under this Part shall be reduced by
(1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured automobile and (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under Coverage A....
The Lumbermen’s policy also provides:
With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.
Appellant relies on Chicago Insurance Company v. Dominguez, 420 So.2d 882 (Fla. 2d DCA 1982), to argue that an excess liability insurer’s uninsured motorist coverage does not come into play until the entire amount provided by the primary insurer has been exhausted. We have no disagreement with the reasoning or the result reached in Dominguez. However, the Dominguez case involved three insurance policies providing uninsured motorist coverage. Travelers afforded $100,000 underin-sured motorist coverage under a policy issued to the Dominguez’ professional association, and Pennsylvania National was found to have $100,000 uninsured motorist coverage covering the Dominguez’ individual automobile. Chicago’s excess uninsured motorist coverage was determined to be $1,000,000. The district court concluded that the umbrella coverage of Chicago would not come into play until the $200,000 primary coverage afforded by Pennsylvania and Travelers had been exhausted. The Dominguez case does not address the question of the entitlement of the respective carriers to a setoff for monies paid by a tortfeasor’s insurance carrier.
We are not persuaded by appellant’s argument based on a theory of equitable subrogation or the cases which it cites in support of this argument. Nor do we believe that the trial court erred when it rejected appellant’s expert testimony that usage and custom in the insurance industry required a determination that the excess carrier should receive the benefits of the set-off. Rather we believe the trial court had to look to the insuring agreements for the answer to this very perplexing question.
Chicago expressly agreed in its policy “to indemnify the insured for the amount of loss which is in excess of the applicable limits of liability of the underlying insurance inserted in column II of item 4 in the declarations.... ” The amount inserted in column II is $10,000. As we pointed out earlier in this opinion, the competing provisions of the Chicago policy and the Lumbermen’s policy result from the definition of loss as defined in the Chicago policy. Chicago argues that in addition to the $10,-000 underlying limit, it should also receive credit for the $10,000 paid by Allstate. In order to reach this result, we would have to ignore the Lumbermen's policy entirely. We are not inclined to do so. The Lumbermen’s policy afforded $10,000 underlying coverage as required by the Chicago policy. The existence of coverage under the Allstate (third party liability carrier) policy with limits equal to the primary carrier’s uninsured motorist limits coincidentally satisfied the primary carrier’s obligation to its insured, and also met the underlying limit requirement of the Chicago policy. Had the limits of the third-party carrier been greater than Lumbermen’s uninsured motorist coverage limits, Chicago would have received the benefit of the payment made by the third-party carrier in excess of Lumbermen’s coverage.
Although we agree with the district court’s observation in Dominguez that the actuarial soundness of umbrella coverage depends upon the fact that it is designed only to come into play after the exhaustion of certain underlying insurance coverage, we do not think that the result we reach here conflicts with that conclusion. The *919 umbrella carrier takes the underlying coverage as it is provided in the primary carrier’s policy. If the primary policy provides for a setoff for the amount paid by the tortfeasor’s carrier, the umbrella carrier should not be permitted to cry “foul” and seek to modify the primary carrier’s policy by the terms of its policy which is labeled “excess liability indemnity.”
In view of the result reached here, we need not discuss Lumbermen’s cross appeal of the order denying its motion for judgment on the pleadings. Accordingly the judgment of the trial court is affirmed.
LETTS, J., concurs.
GLICKSTEIN, J„ dissents with opinion.