GLOBE INDEMNITY COMPANY

v.

Claudia JORDAN, et al.

Supreme Judicial Court of Maine.

Argued Sept. 23, 1993.

Decided Dec. 9, 1993.

**1280**

Christopher C. Taintor (orally), Norman, Hanson & Detroy, Portland, for plaintiff.

Marshall J. Tinkle (orally), Thompson, McNaboe, Ashley & Bull, Jennifer S. Begel, Friedman & Babcock, Christopher Dinan, Monaghan, Leahy, Hochadel & Libby, Portland, for defendants.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA,* JJ.

CLIFFORD, Justice.

Claudia Jordan and Keystone Insurance Company, defendants in this declaratory judgment action, appeal from a summary judgment entered in the Superior Court (Cumberland County, *Lipez, J.*) making determinations as to the obligations of Keystone and Globe Indemnity Company to defend and indemnify Jordan in an underlying lawsuit. Concluding that the Superior Court correctly decided the issues of coverage, and properly exercised its discretion in apportioning the costs of defense, we affirm the judgment.

On December 21, 1990, Cora Gervais was injured when, as a pedestrian, she was struck by a vehicle operated by Jordan in front of Dolby Funeral Chapel in Windham. At the time of the accident, Jordan was driving a

* Dana, J. sat at oral argument and participated in the initial conference, but participated no further.

car owned by Lee Dodge from its Westbrook location because she had left her own car to be repaired at the Lee Dodge location in Portland.

Cora Gervais and her husband Dennis Gervais brought the underlying suit against Jordan, Robert Dolby and the Dolby Funeral Chapel, Inc., and Lee Dodge. Globe, Lee Dodge's insurer, brought this declaratory judgment action to determine the obligations of Globe and Keystone to defend and indemnify Jordan in the Gervais lawsuit. Three insurance policies were identified as having potential obligations to defend and indemnify Jordan.

### The Insurance Policies

#### 1. The Globe Garage Policy:

Globe issued two insurance policies to Lee Dodge. The first is a "Garage policy" that provides coverage up to $500,000 per occurrence for Lee Dodge car drivers who qualify as "insureds." Section II.A.1.a of the Garage policy states that the following are "insureds" for covered "autos:"

(1) You [Lee Dodge] for any covered "auto."

(2) Anyone else while using with your permission a covered "auto" you own, hire, or borrow except:

. . . .

(d) Your customers, if your business is shown in the Declarations as an "auto" dealership. However, if a customer of yours:

(i) Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

(ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered "auto" is principally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits exceed the limits of their other insurance.

#### 2. The Globe Umbrella Policy:

The second policy Globe issued to Lee Dodge is an "Umbrella policy" that covered the same risks that the underlying Garage policy covered, up to $10 million per occurrence. The policy stated:

a. We will pay those sums, in excess of the amount payable under the terms of any **underlying insurance,** that the insured becomes legally obligated to pay as damages because of injury or damage to which this insurance applies, provided that the **underlying insurance** also applies, or would apply but for the exhaustion of its applicable limits of insurance.

. . . .

The exclusions applicable to the **underlying insurance** also apply to this insurance.

(Emphasis in original.) "Underlying insurance" is defined in the Umbrella policy as "only the liability insurance coverage provided under policies shown in the Declarations or endorsed onto this policy."

#### 3. The Keystone Policy:

Keystone is Jordan's liability insurer. Under its policy, Keystone would provide coverage up to $100,000 to Jordan when driving a car that is substituted for her own while her own is being repaired. The Keystone policy states that when other liability insurance applies, Keystone is obligated to pay only its share of the loss. "Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance."

In addition, Part A, section A of the Keystone policy addresses paying Jordan's defense costs, and provides that Keystone would settle or defend claims or suits and would pay all defense costs (in addition to limits of liability), but would not settle or defend once the limit of liability had been exhausted.

Globe initiated this declaratory judgment action. Defendants Jordan and Keystone counterclaimed against Globe, cross-claimed

against the other defendants,[1] and impleaded Lee Dodge as a third-party defendant, seeking declaratory relief on the same issues presented by Globe, i.e., the obligations of Globe and of Keystone to defend and indemnify Jordan in the underlying Gervais lawsuit. Jordan and Keystone (jointly) and Globe filed motions for summary judgment.

Jordan and Keystone argue that Globe's Garage policy provides primary coverage to Jordan and that Globe's Umbrella policy provides her with secondary coverage. They contend that coverage under Globe's Umbrella policy and the Keystone policy should be allocated in the same proportions as the limits of each policy, and that Globe should indemnify Keystone for Keystone's defense costs.

In entering a summary judgment, the court rejected the contentions of Jordan and Keystone. The court noted that the parties stipulated that Lee Dodge was an auto dealership, and determined that (1) Jordan was excluded from coverage under Globe's Garage policy by the customer exclusion clause; (2) under the Garage policy, Globe owed coverage to Jordan only to the minimum amount required by statute; (3) Jordan was not covered by Globe's Umbrella insurance policy; and (4) Keystone and Globe must contribute to the defense of Jordan in the underlying suit on an equitable basis in the same ratio as their obligations to indemnify. This appeal followed.

■ Because there is no dispute as to the material facts relevant to this appeal, the court properly entertained motions for a summary judgment, *Lewiston Bottled Gas Co. v. Key Bank of Maine*, 601 A.2d 91, 93 (Me.1992), and entered its declaratory judgment. The court's decision was based on an interpretation of the insurance policies. Unless it is ambiguous, construction of language in written documents is a question of law. *See Northern Util., Inc. v. City of South Portland*, 536 A.2d 1116, 1117 (Me.1988). Therefore, we review the Superior Court decision for errors of law. *See Northern Util.,*

536 A.2d at 1117; *see also Currier v. Cyr*, 570 A.2d 1205, 1208 (Me.1990).

## I. COVERAGE UNDER GLOBE'S GARAGE POLICY

Section II.A.1.a of the Garage policy provides coverage for anyone using, with Lee Dodge's permission, a covered "auto" except for "[Lee Dodge's] customers, if [the] business is shown in the Declarations as an 'auto' dealership." Although the policy provisions provide coverage for a customer whose other available insurance is less than that mandated by law,[2] the plain language of the policy leads us to agree with the Superior Court that, because Jordan was a customer of Lee Dodge, and because Lee Dodge is shown in the declarations as an auto dealership, a fact stipulated to by the parties, Jordan is excluded from primary coverage.

■ Jordan and Keystone attempt to distinguish between Lee Dodge's business as an auto dealership and its rental business. They contend that Jordan was a customer not of the auto dealership, but rather of what they contend is a separate rental business with a separate location in Westbrook. Therefore, they argue, the exclusion for auto dealership customers does not apply. We are unpersuaded by that contention. The Garage policy covers Lee Dodge as a business entity. Lee Dodge is an automobile dealership, and is identified as such in the declarations. The rental of automobiles is an integral part of the business of automobile dealerships. Accordingly, because Jordan was Lee Dodge's customer, the Garage policy by its own terms provides no coverage for her use of the Lee Dodge vehicle.

■ Jordan and Keystone also contend that Jordan is covered under the Garage policy pursuant to Section II.B.7 that excludes from coverage:

Any covered "auto" while leased or rented to others. But this exclusion does not apply to a covered "auto" you rent to one of your customers while their "auto" is left with you for service or repair.

---

1. The other defendants in this declaratory judgment action are Cora and Dennis Gervais, Robert Dolby and Dolby Funeral Chapel, Inc.

2. *See supra* pp. 2–3.

Jordan and Keystone rely on *Stanfield v. Hartford Accident & Indem. Co.*, 581 So.2d 340 (La.Ct.App.1991) and *Connecticut Indem. Co. v. Cordasco*, 369 Pa.Super. 439, 535 A.2d 631 (1987). Those cases held that provisions similar to Section II.B.7 covered customers who left an auto for repair as exceptions from the general exclusion for customers of the auto dealership. We are unpersuaded, however, by the holdings in those cases because they are contrary to the basic principle of insurance law that coverage cannot be provided by an exclusion clause. An exclusion clause can "subtract from coverage" granted somewhere else in the policy; it alone cannot establish coverage. *Peerless Ins. Co. v. Brennon*, 564 A.2d 383, 387 (Me. 1989). The Superior Court correctly construed Section II.A.1.a of the Garage policy to exclude coverage for Jordan because she was a customer; the exception from exclusion in Section II.B.7 cannot in and of itself create coverage that is not otherwise provided.

■ Nevertheless, 24-A M.R.S.A. § 2909 (1990) and 29 M.R.S.A. § 832 (Supp.1992)[3] require a certain level of coverage for Jordan even though the Garage policy excludes her by its terms. These statutory mandates ($20,000 per person, $40,000 per occurrence, $10,000 property damage) override any contrary provisions in the Garage policy and result in Jordan being covered as a primary insured in the mandatory minimum amounts. *See Government Employees Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 458 A.2d 1205, 1208–09 (Me.1983).

## II. COVERAGE UNDER GLOBE'S UMBRELLA POLICY

■ Jordan and Keystone contend that Jordan is also covered under the $10 million Umbrella policy, pursuant to the provision in that policy providing coverage if "the underlying insurance [Garage policy] applies, or would apply but for the exhaustion of its applicable limits of insurance." They argue that because Maine law mandates that Jordan be an insured under the Garage policy up to the statutory minimum, the Umbrella policy must also cover her in amounts in excess of that level because, by its terms, it covers anyone covered by the underlying Garage policy. We agree with the Superior Court, however, that the Umbrella policy applies to pay excess over the underlying insurance only if the insured qualifies for the underlying insurance *by its own terms*, and does not apply to Jordan solely by virtue of the statutory mandates.

■ The purpose of an umbrella policy is to protect the insured in the event of catastrophic circumstances when the insurer's liability would exceed the limits of its underlying policy. It is designed to expand the *amount*, but not the *scope* of coverage. Statutes mandating minimum primary coverage are not intended to affect umbrella policies, and the statutes here do not operate to expand the contract language of Globe's Umbrella policy covering Lee Dodge. *See* 12A Couch, *Cyclopedia of Insurance Law* § 45.-757 (1981) (financial responsibility acts do not apply to voluntary policies); *see also* Appleman, *Insurance Law and Practice* § 4300 (Buckley ed. 1979) (insurance policies in excess of compulsory coverage are voluntary policies to the extent of the excess). The Superior Court correctly concluded that there is no coverage for Jordan's accident under the Umbrella policy.

---

**3.** 24-A M.R.S.A. § 2909 (1990) addresses insurance for automotive dealers:

 1. As used in this section, "owner" means the owner of a motor vehicle, the owner's agent, employee, or independent contractor.

 2. The superintendent shall not approve any policy required pursuant to Title 29, section 832, unless coverage is provided for both the owner and operator of the motor vehicle.

 3. The owner's policy must provide primary coverage up to the limits specified in Title 29, section 832. Any other valid and collectible insurance policy available to an operator who is not the owner must provide excess coverage.

Thus, the statute requires the Garage policy to provide primary coverage up to the statutory minimums.

 29 M.R.S.A. § 832 (Pamph.1992) requires that dealers procure insurance that will provide $20,-000 for a person's injury or death, $40,000 for more than one person's injury or death, and $10,000 for property damage arising from an accident involving, or caused by, a vehicle with dealer or loaner plates. 29 M.R.S.A. § 831 (Pamph.1992), which Keystone and Jordan contend applies in this case, requires the same minimum insurance coverage for rental vehicles.

### III. APPORTIONMENT OF DEFENSE COSTS

Because Jordan has primary coverage under the Garage policy by virtue of the statutory mandates, and the Keystone policy is in excess of that policy, Keystone contends that the Superior Court erred by ruling that Keystone must contribute to Jordan's defense in the same proportion as the respective duties of Globe and Keystone to indemnify. It contends that as an excess insurer, it should not be required to contribute to defense costs until the primary insurer, in this case Globe, has discharged its duty and exhausted the statutory mandatory limits. Although there is authority to support Keystone's contentions, *see, e.g., Progressive Cas. Ins. Co. v. Travelers Ins. Co.,* 735 F.Supp. 15, 19 (D.Me. 1990), we discern no error or abuse of discretion in the Superior Court's decision in this case to apply equitable principles to apportion costs of defense, and to apportion those costs between Globe and Keystone in the same ratio as each insurer pays for indemnification of Jordan. *See Guaranty Nat'l Ins. Co. v. American Motorists Ins. Co.,* 758 F.Supp. 1394, 1398 (D.Mont.1991); *Millers' Mut. Ins. Assoc. of Illinois v. Iowa Nat'l Mut. Ins. Co.,* 618 F.Supp. 301, 307 (D.Colo. 1985).

Cases applying the rule that an excess insurer owes no obligation to contribute to defense costs until and unless the primary coverage is completely exhausted, generally involve truly excess, umbrella policies, or policies in which the language clearly provides that no defense would begin until the underlying insurance was exhausted. *See Hartford Accident & Indem. Co. v. Continental Nat'l Am. Ins. Co.,* 861 F.2d 1184, 1187 (9th Cir.1988); *American Concept Ins. Co. v. Certain Underwriters at Lloyds of London,* 467 N.W.2d 480, 483–84 (S.D.1991); *Colorado Farm Bur. Mut. Ins. Co. v. North Am. Reinsurance Corp.,* 802 P.2d 1196, 1198 (Colo. App.1990).

In this case, the Keystone policy is not a pure excess or umbrella policy. The policy generally provides primary coverage for Jordan and becomes a policy providing excess coverage over any other collectible insurance only when Jordan is operating a vehicle other than her own. The purpose of an umbrella policy, on the other hand, is to provide coverage in great amounts for a relatively modest premium, and that purpose can be accomplished only because the umbrella policy has no applicability at all until the primary coverage is completely exhausted. *See Hartford Accident & Indem. Co.,* 861 F.2d at 1187. The Superior Court correctly concluded that, in this case, it is inequitable to allow Keystone to benefit from Globe's defense without contributing to a portion of the defense costs, especially in view of the fact that Globe is the primary insurer only by virtue of statutory mandates. *See Guaranty Nat'l Ins. Co.,* 758 F.Supp. at 1396; *Millers' Mut. Ins. Assoc. of Illinois,* 618 F.Supp. at 307; *American Fidelity Ins. Co. v. Employers Mut. Cas. Co.,* 3 Kan.App.2d 245, 593 P.2d 14, 23 (1979) (duty on part of excess insurer to defend after primary insurance exhausted based on proportional liability for indemnification). The apportionment ratio chosen by the court for the cost of defending the underlying suit is both fair and equitable.

The entry is:

Judgment affirmed.

All concurring.