Richard H. COBB

v.

ALLSTATE INSURANCE COMPANY

v.

INSURANCE COMPANY OF NORTH AMERICA.

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 24, 1995.

Decided Aug. 1, 1995.

Arthur J. Greif, Lowry & Associates, Bangor, for plaintiff.

Naomi Honeth, Beals & Quinn, Portland, for Allstate Ins. Co.

Anne H. Cressey, Richardson, Whitman, Large & Badger, Portland, for INA.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

This case comes to us pursuant to M.R.Civ.P. 72(c)[1] on a report from the Superior Court (Kennebec County, *Chandler, J.*). In the underlying action, Richard Cobb asserts breach of contract claims against Insurance Company of North America (INA) and Allstate Insurance Company (Allstate), the two insurers providing his underinsurance coverage. Because the Superior Court erred in prorating between INA, the primary insurer covering Cobb, and Allstate, the excess insurer, the money recovered by Cobb from the underinsured tortfeasor, and rejected INA's request that it, as the primary insurer, be credited with the entire amount, we vacate the judgment and remand for the entry of a summary judgment in favor of INA.

Cobb, while driving a car owned by his employer, Eastman Kodak Company, was involved in an automobile accident with another vehicle. The bodily injury limit for liability coverage under the automobile insurance policy insuring the other driver was $25,000. Kodak carried $40,000 uninsured motorist coverage[2] on its car under a business automobile policy issued by INA. Cobb carried personal automobile insurance issued by Allstate, providing uninsured motorist coverage up to $100,000 for a vehicle that he was operating.

Cobb settled his personal injury claim against the driver of the other vehicle for the full $25,000 policy limit. Because his damages exceeded $25,000, Cobb then brought suit against both INA and Allstate seeking to recover the full amount of underinsured motorist coverage available to him under the two policies.[3] Both policies contain clauses reducing the insurer's obligation to an insured by the amount of any payment received from the tortfeasor.[4] Because Cobb

---

1. M.R.Civ.P. 72(c) provides:

   (c) **Report of Interlocutory Rulings.** If the court is of the opinion that a question of law involved in an interlocutory order or ruling made by it in any action in the Superior Court ought to be determined by the Law Court before any further proceedings are taken therein, it may on motion of the aggrieved party report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties without making any decision therein.

2. "Uninsured vehicle coverage" refers to coverage protecting persons

   who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle.

   24–A M.R.S.A. § 2902(1) (1990). An "underinsured motor vehicle" is

   a motor vehicle for which coverage is provided, but in amounts less than the minimum limits for bodily injury liability insurance provided for under the motorist's financial responsibility laws of this State or less than the limits of the injured party's uninsured vehicle coverage.

   *Id.*

3. Together, the INA and Allstate policies provide Cobb with a maximum of $140,000 uninsured/underinsured motorist coverage. Because the $25,000 recovered from the tortfeasor must be subtracted from this amount, the maximum amount Cobb is seeking from the two defendants is $115,000. *See Connolly v. Royal Globe Ins. Co.*, 455 A.2d 932, 936 (Me.1983).

4. The INA policy states, "If we make any payment and the insured recovers from another party, the insured shall hold the proceeds in trust for us and pay us back the amount we have paid." Allstate's policy reads, "Damages payable will be reduced by all amounts paid by the owner or operator of the uninsured auto or anyone else responsible. This includes all sums paid under the bodily injury liability of this or any other auto policy."

   In addition, Maine law requires that an underinsurer's obligation be reduced by the amount of any payment received from a tortfeasor. *See* 24–A M.R.S.A. § 2902(4) (1990). The statute, however, offers no guidance for resolution of the issue involved in this case.

was operating Eastman Kodak's vehicle, and not his own, there is no dispute that by the terms of the policies INA is the primary insurer and Allstate is the excess insurer.

Following Cobb's rejection of its offer of $16,500,[5] INA moved for a summary judgment on the ground that it, as the primary carrier, was entitled to apply the $25,000 recovered by Cobb from the tortfeasor as an offset to its $40,000 exposure. The Superior Court decided that the funds received by Cobb should be allocated between the two insurers based on the percentage of the total amount of damages paid by each and denied summary judgment. Over Allstate's objection, the Superior Court granted INA's motion to report the case pursuant to M.R.Civ.P. 72(c).[6]

The question presented by the report is of "sufficient importance and doubt," that we accept the report. *Toussaint v. Perreault,* 388 A.2d 918, 920 (Me.1978) (emphasis omitted) (citing *State v. Placzek,* 380 A.2d 1010, 1014 (Me.1977)). The issue is one of first impression in this State and concerns not only these parties, but is also important to Maine's citizens and the companies that insure them. *See Giles v. Maine Fidelity Life Ins. Co.,* 402 A.2d 473, 475 (Me.1979) (citing *Placzek,* 380 A.2d at 1014).

Because Allstate's policy is excess, it has no applicability at all until the primary coverage is exhausted. The denial of any setoff to Allstate is a logical corollary to the lack of

risk it faces until Cobb has sustained damages above $40,000, the limit of the primary insurer's responsibility.[7] In so holding, we are in agreement with most of the jurisdictions that have considered the issue. *See Chicago Ins. Co. v. Lumbermen's Mut. Casualty Co.,* 503 So.2d 916 (Fla.Dist.Ct.App.1987) (rejecting excess insurer's equitable subrogation arguments); *Georgia Farm Bureau Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 255 Ga. 166, 336 S.E.2d 237 (1985) (holding excess insurer, the insurer receiving premium from insured, responsible for covering damages in excess of liability coverage recovered from tortfeasor); *see also Chester v. State Farm Mut. Auto. Ins. Co.,* 227 Ill. App.3d 320, 169 Ill.Dec. 315, 320, 591 N.E.2d 488, 493 (1992); *Dairyland Ins. Co. v. Sylva,* 242 Va. 191, 409 S.E.2d 127, 129–30 (1991).

This is not inconsistent with our previous decisions holding that liability or costs between insurers both deemed primary are to be prorated,[8] nor with *Globe Indem. Co. v. Jordan,* 634 A.2d 1279 (Me.1993). In *Globe,* an auto dealer's customer injured a pedestrian while driving a car owned by the auto dealer. Even though the auto dealer's policy, issued by Globe Indemnity Company by its own terms excluded coverage for customers, it was deemed to provide primary coverage for the accident by virtue of statutory law mandating minimum coverage for customers of automobile dealers. The customer's policy, issued by Keystone Insurance

---

5. INA's offer of $16,500 was slightly in excess of the $15,000 it would be obligated to pay if it is entitled to offset the entire $25,000 from its $40,000 policy limit.

6. M.R.Civ.P. 72(c) serves as an exception to the general rule that the denial of a motion for a summary judgment is not a final judgment that may immediately be appealed. *Olson v. Albert,* 523 A.2d 585, 589 (Me.1987).

7. Moreover, if Cobb's damages are ultimately determined not to exceed $40,000, INA would be entitled to apply the $25,000 Cobb has already received as a setoff, making its maximum liability to Cobb $15,000. Permitting Allstate to share the $25,000 as an offset results in INA paying an amount greater than $15,000. We see no reason to require INA to pay more merely because Cobb's damages are greater than $40,000, the limit of INA's liability.

8. *See York Mut. Ins. Co. v. Continental Ins. Co.,* 560 A.2d 571, 573 (Me.1989) (each primary insurer was responsible for half of settlement judgment pursuant to rule that each company "contribute equally until the limit of the smaller policy is exhausted, with any remaining portion of the loss then being paid from the larger policy up to its limits"); *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.,* 513 A.2d 283, 286–87 (Me.1986) (when both policies' pro rata clauses required same apportionment of liability loss between primary insurers in "proportion to the respective coverage afforded by them to the insured," equitable principles required that legal fees be apportioned accordingly); *Carriers Ins. Co. v. American Policyholders' Ins. Co.,* 404 A.2d 216, 221–22 (Me.1979) (liability between two insurers when total loss did not exceed limits of either policy loss should be prorated equally up to policy limits of lower policy, with any remaining portion of loss then being paid from the larger policy up to its limits).

Company, was excess because the customer was operating a non-owned vehicle. *Id.* at 1283–84. Because the Globe policy was primary only by virtue of statutory mandates, and in the absence of a true primary/excess difference in policies, we upheld the trial court's application of equitable principles to apportion the costs of defending the underlying suit brought by the pedestrian between the primary and excess insurer. *Id.* at 1284.

In this more typical case, however, involving the set off of the recovery by the insured from the underinsured tortfeasor, INA is the primary insurer because of contractual language contained in both policies, and not as a result of a statutory requirement. Application of any monies received by an insured from a tortfeasor as an offset to the first-tier provider's liability is more logical and efficient than prorating. As would have been the case here, the primary insurer will be able to settle more quickly with its insured and remove itself from further legal disputes. The reduced need for litigation will not only result in lessened costs to consumers, but will reduce the strain on overburdened judicial resources.

The entry is:

Judgment vacated. Remanded for entry of a summary judgment for INA.

All concurring.