STATE OF MAINE                                                    SUPERIOR COURT
CUMBERLAND, ss.                                                   CIVIL ACTION
                                                                 Docket No. CV-07-258
                                                                 TDW -CUM- 5/30/2008

ELIZABETH MAZZA, individually
and as Personal Representative of the         RECEIVED
Estate of Anthony Mazza,

         Plaintiff,

    v.                                                ORDER

YORK INSURANCE CO., et al.,

         Defendants.


Before the court are motions for summary judgment by both defendants, York

Insurance Co. of Maine and Allstate Insurance Co., and cross motions for summary

judgment by plaintiff Elizabeth Mazza.


Summary Judgment

         Summary judgment should be granted if there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law. In considering a

motion for summary judgment, the court is required to consider only the portions of the

record referred to and the material facts set forth in the parties' Rule 56(h) statements.

E.g., Johnson v. McNeil, 2002 ME 99 ¶ 8, 800 A.2d 702, 704. The facts must be

considered in the light most favorable to the non-moving party. Id. Thus, for purposes

of summary judgment, any factual disputes must be resolved against the movant.

Nevertheless, when the facts offered by a party in opposition to summary judgment

would not, if offered at trial, be sufficient to withstand a motion for judgment as a

matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME

99 ¶ 8, 694 A.2d 924, 926.

Facts

In this case the relevant facts are undisputed, at least for purposes of summary judgment. Elizabeth Mazza and her late husband were passengers in a car driven by Mazza's daughter that was involved in a collision with a tow truck in Dayton, Maine on October 8, 2005. At the time of the collision, in addition to Elizabeth Mazza and her husband, there were three other occupants in the vehicle in which the Mazzas were riding: the Mazzas' daughter Heather White, Heather's husband Norman White, and the Mazzas' granddaughter Ava White. In the collision Elizabeth Mazza suffered horrific injuries and her husband was killed. Norman White was also killed and Heather White and Ava White were injured.

The tow truck that collided with the Mazzas' vehicle was owned by DC Towing and operated by Keith Cluff. It is not disputed that Cluff was responsible for the accident. DC Towing's insurer tendered $750,000, the liability limit of its insurance policy. Cluff contributed $10,000, and a third, marginally involved motorist tendered $12,500. This created a fund of $772,500 to be distributed among the five occupants of the vehicle in which the Mazzas were riding.

The attorneys for the occupants of the vehicle in which the Mazzas were riding retained Terry Garmey, Esq. to evaluate the respective claims of the five occupants. Garmey's evaluation of the five claims exceeded $772,500 by a considerable amount. The $772,500 settlement fund was therefore distributed to the five claimants – Elizabeth Mazza, the Estate of Anthony Mazza, Heather White, the Estate of Norman White, and Ava White – on a pro rata basis. Specifically, Elizabeth Mazza received a distribution of $180,765 and the Estate of Anthony Mazza received a distribution of $102,742.50.

At the time of the accident Heather White's vehicle was insured by defendant York Insurance Co. of Maine. A true copy of the York policy is contained in the

2

summary judgment record as Exhibit A to the affidavit of Susan Libby. The York policy provided uninsured and underinsured motor vehicle (UM) coverage of up to $100,000 per person and $300,000 per accident.

At the time of the accident Elizabeth and Anthony Mazza were the named insureds on an auto policy issued by defendant Allstate. A true copy of the Allstate policy is contained in the summary judgment record as Exhibit B to the Allstate's SMF. The Allstate policy provided uninsured and underinsured coverage of up to $100,000 per person and $300,000 per accident.

At all pertinent times Heather and Norman White were residents of Maine and their automobiles were principally garaged in Maine. At all pertinent times Elizabeth Mazza and here husband were residents of Vermont.

York and Allstate do not dispute that both Elizabeth Mazza's claim and that of her husband's estate exceed the amount each has previously received from the settlement fund by more than $200,000.

Mazza does not dispute that York's UM coverage is primary and Allstate's is excess.[1] York and Allstate interpret their polices and the applicable law to allow both Elizabeth Mazza and the Estate of Anthony Mazza to stack the UM coverages of $100,000 per person in each policy so as to allow each to recover a maximum of $200,000 in UM coverage. York and Allstate then take the position that in the case of Elizabeth $180,765 should be deducted from any available UM coverage based on the pro rata payment she has already received from the settlement fund. The first $100,000 of the $180,765 received by Elizabeth equals York's primary UM coverage of $100,000 and, in York's view, eliminates any further UM obligation to Elizabeth under the York policy.

---

[1] On this issue of primary v. excess coverage, see Cobb v. Allstate Insurance Co., 663 A.2d 38, 39-40 (Me. 1995).

3

Elizabeth still has $100,000 in excess UM coverage available from Allstate and has received only $80,765 against that amount. Accordingly, Allstate contends that it owes Elizabeth $19,235 in UM coverage so that her total recovery will total $200,000. Allstate has in fact paid Elizabeth the $19,235 it contends it owes her.

Similarly, York and Allstate take the position that in the case of the Estate of Anthony Mazza, $102,742.50 should be deducted from any available UM coverage based on the pro rata payment the Estate has already received from the settlement fund. The first $100,000 of that $102,742.50 payment matches York's primary UM coverage of $100,000 and, in York's view, eliminates any further UM obligation to the Estate under the York policy. The Estate still has $100,000 in excess UM coverage available from Allstate and has received only $2,742.50 against that amount. Accordingly, Allstate acknowledges that it owes (and has in fact paid) the Estate $97,257.50 in UM coverage so that the Estate's total recovery now totals $200,000.

Mazza, in contrast, takes the position that because her total damages and the Estate's total damages each exceed the pro rata settlement payments already received by more than $200,000, she and the Estate are both entitled to collect a total of $200,000 in UM coverage - $100,000 each from York and $100,000 each from Allstate (minus, in Allstate's case, the amounts already paid).

Claims Against York

The parties do not appear to disagree that the question of whether the York policy and the governing statute require York to pay $100,000 to Elizabeth Mazza and to the Estate of Anthony Mazza is an issue to be decided under Maine law. For purposes of this motion, York also assumes that DC Towing and Cluff qualify as

4

"underinsured" for purposes of the applicable statute and the York policy.[2] Finally, there does not appear to be any dispute that the maximum amount of potential UM coverage available to Elizabeth Mazza and to the Estate of Anthony Mazza would consist of $200,000 – a figure obtained by "stacking" Allstate's $100,000 excess UM coverage on top of York's $100,000 primary UM coverage. *See Connolly v. Royal Globe Insurance Co.*, 455 A.2d 932 (Me. 1983).

Under 24-A M.R.S. § 2902(6), when 2 or more persons are legally entitled to recover damages from a particular owner or operator of an underinsured motor vehicle, the amount of underinsured vehicle coverage applicable to each person

> is determined by subtracting any payments actually made to the injured person [by the insurer of the underinsured vehicle] from the injured person's . . . underinsured vehicle coverage policy limits . . . .

Thus, under the statute, York and Allstate have paid all amounts required. As Mazza points out, however, the last sentence of § 2902(6) expressly permits an insurer to provide greater underinsurance coverage than required.

Mazza then argues that under the York policy, York is only entitled to offset payments received from the underinsured motorist from the total amount of damages sustained by her and by her husband's estate. Because her damages and the Estate's damages exceed the amounts received from the underinsured motorist by more than $200,000, she argues that York is required to pay the full $100,000 in UM coverage available both to her and to her husband's estate.

---

[2] York has reserved the right to argue that DC Towing and Cluff are not in fact "underinsured" under the amendment passed by the Legislature in response to the Law Court's decision in *Mullen v. Liberty Mutual Ins. Co.*, 589 A.2d 1275 (Me. 1991). Mazza vigorously disagrees with York on this subject, but the court does not have to reach the issue.

5

This position, however, is not substantiated by the York policy. The York policy, as amended with endorsements applicable to Maine, provides in its "limit of liability" section that

> With respect to coverage under Section 2 of the definition of uninsured motor vehicle, the <u>limit of liability shall be reduced by all sums paid</u> because of the bodily injury by or on behalf of persons or organization who may be legally responsible.

York Policy, Uninsured Motorist Coverage, Limit of Liability, § E (emphasis added).[3] Section 2 of the definition of uninsured motor vehicle covers underinsured vehicles.[4]

This language tracks 24-A M.R.S. § 2902(6) and provides that the limit of liability ($200,000 under the stacked policies) shall be reduced by all sums paid to Elizabeth ($180,765). Mazza argues that an ambiguity is created because the policy also provides that the insurer will not make a "duplicate payment" for any element of loss for which payment has been made by or on behalf of persons who may be legally responsible. York policy, p. 11. The court does not find the provision in question to be ambiguous and therefore concludes that York is entitled to summary judgment.

## Claims against Allstate

Much of the discussion with respect to the Allstate policy tracks the prior discussion with respect to the York policy. The parties agree that the issues raised with respect to UM coverage under the Allstate policy, in contrast to the York policy, are governed by Vermont law. However, they also agree that there are no relevant

---

[3] The provisions governing Uninsured Motorist Coverage in the York policy are contained in pages 10-12 of the policy. The limit of liability provision is on page 11. The Maine endorsement adding Section E is found at page 17.

[4] *See* Maine endorsement amending Section 2 of the definition of uninsured vehicle. York Policy p. 17.

differences between Vermont and Maine law on the issues that are dispositive here.[5] Under Vermont law, as under Maine law, Allstate's UM coverage would qualify as excess. *State Farm Mutual Auto Insurance Co. v. Powers*, 732 A.2d 730, 734 (Vt. 1999). Like Maine, Vermont allows UM insurers to offset their UM payments by the amount the claimant has received from the tortfeasor. *See* 23 Vt. Stat. Ann. § 941(e); *State Farm Mutual Auto Insurance Co. v. Powers*, 732 A.2d at 737-38, citing the Maine Law Court's decision in *Cobb v. Allstate*. And like Maine, Vermont also allows insurers to provide more favorable UM coverage. *See* 23 Vt. Stat. Ann. § 941(e) ("subject to the terms of such coverage").

The Allstate policy provides that when Allstate pays UM payments to any person, Allstate is "entitled to repayment of amounts paid by [Allstate] . . . out of the proceeds of any settlement or judgment that person recovers from any responsible party or insurer. "Allstate policy, p. 14 (Uninsured Motorist Insurance Coverage, Trust Agreement, § 1). That language is almost identical to the statutory language in 23 Vt. Stat. Ann. § 941(e):

> If payment is made under underinsured motorist coverage, and subject to the terms of that coverage, to the extent of that payment, the insurer is entitled to the proceeds of any settlement or recovery from any person legally responsible for the damage or personal injury, as to which the payment was made . . .

The court therefore concludes that Allstate's policy entitles Allstate to offset any amount paid by the tortfeasor from the amount of UM coverage Allstate is required to pay.

---

[5] The only difference discerned by the court is that the Vermont statute expressly removes any argument that the DC Towing vehicle does not qualify as an underinsured vehicle. *See* 23 Vt. Stat. Ann. § 941(f)(2).

7

Mazza argues that another provision of the Allstate policy contains language that suggests that overall damages (and not just the limit of UM liability) should be reduced by any payments made by the tortfeasor, but the short answer is that this provision applies to damages "involving an uninsured auto, <u>which is not an underinsured motor vehicle.</u>" Allstate policy, p. 13 (emphasis added). The court therefore does not have to consider the effect of this provision or any purported ambiguity in this position because it is inapplicable here.

As a result, Allstate is also entitled to summary judgment in this case.

In conclusion, the court would observe that the result here – whereby Elizabeth Mazza and her late husband's estate each recover a total of $200,000 from a combination of the pro rata settlement fund and the available UM coverage – is consistent with the purpose of underinsured motorist coverage, which is to permit "the injured party to recover the amount he would have received had the tortfeasor been insured to the same extent as the injured party." *Connolly*, 455 A.2d at 936.

The entry shall be:

The motions for summary judgment by defendant York Insurance Co. of Maine and Allstate Insurance Co. are granted and plaintiff's cross motions for summary judgment against York Insurance Co. and Allstate are denied. Accordingly, the complaint is dismissed.

The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:     May _20_, 2008

<br>

Thomas D. Warren
Justice, Superior Court

8

RICHARD BERNE ESQ
22 FREE STREET SUITE 4
PORTLAND ME 04101

*Plaintiff*

Maine 04112-0287

*York Ins.*

JOHN WHITMAN ESQ
PO BOX 9545
PORTLAND ME 04112

*Allstate Ins*

MARTICA DOUGLAS ESQ
PO BOX 7108
PORTLAND ME 04112