LISA CHESTER, Plaintiff-Appellee, v. STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPANY, Defendant-Appellant (Capital Holding Co., d/b/a Worldwide Insurance Group, Defendant).

Second District   No. 2—91—0909

Opinion filed April 22, 1992.

Myron J. Hall, of Myron J. Hall, Ltd., of Waukegan, for appellant.

Barry Stewart Silver, of Northbrook, and Robert P. Pisani, of McKenna, Storer, Rowe, White & Farrug, of Chicago, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiff, Lisa Chester, filed a two-count complaint in the circuit court of Lake County naming as defendants State Farm Mutual Automobile Insurance Company (State Farm) and Capital Holding Company, d/b/a Worldwide Insurance Group (Worldwide), and seeking a declaration that State Farm was a primary insurer and Worldwide an excess insurer as to the underinsured motorist provisions of their respective policies. After considering the arguments of the parties, the trial court found State Farm to be the primary insurer, Worldwide to be the excess insurer, State Farm to be liable to the plaintiff in the amount of $100,000 and Worldwide to be liable, after deduction of a $25,000 setoff, in the amount of $25,000. State Farm appeals, and Worldwide is not a party to this appeal.

State Farm raises the following issues on appeal: (1) whether the trial court erred in awarding a monetary judgment to the plaintiff where the plaintiff did not specifically ask for any money judgment in her pleadings; (2) whether the trial court erred in finding State Farm to be the primary insurer and Worldwide to be the excess insurer; and (3) whether the trial court erred in not applying a setoff in favor of State Farm based upon payments received by the plaintiff under a bodily injury liability policy.

The following facts are relevant to our disposition of this appeal. The plaintiff's complaint alleges that on December 23, 1988, while she was a passenger in an automobile owned and operated by Jon Hiltibran, Hiltibran's vehicle was involved in a collision with an automobile driven by John Lopez. The plaintiff suffered serious and permanent head and facial injuries and settled against John Lopez in the amount of $25,000. The total amount of damages allegedly sustained by the plaintiff are "IN EXCESS OF FORTY THOUSAND DOLLARS ($40,000) and will continue to rise." It is also alleged that the value of the plaintiff's claim exceeds the total limits of underinsured motorist coverage of both automobile liability insurance policies.

The complaint further alleges that State Farm had issued an automobile liability insurance policy to the plaintiff and Reed Chester which provided underinsured motorist coverage in the amount of $100,000 per person and $300,000 per accident. Worldwide also issued a policy of automobile liability insurance to Reed Chester which provided underinsured motorist coverage in the amount of $50,000 per

person and $100,000 per accident. Count I asks the court to declare State Farm to be the primary insurer, and count II asks the court to declare Worldwide to be the excess insurer.

The prayers for relief in both counts ask the court to determine and adjudicate the liabilities and rights of the parties under the insurance policies. Each prayer also asks for a declaratory judgment in accordance with section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—701) and for "such other and further relief as the court may deem just and proper." Neither expressly asks for a money judgment against either defendant.

Attached to the complaint and identified as exhibit A is a copy of an insurance policy issued by State Farm and naming the plaintiff as an insured. The first page of that policy refers to various endorsements, one of which is entitled "6998U Amendatory Endorsement." A copy of that endorsement is included with exhibit A and contains a provision captioned "If There Is Other Underinsured Motor Vehicle Coverage." That provision states in pertinent part:

"2. If the insured sustains bodily injury while occupying a vehicle which is not your car, coverage under this policy applies:

a. as excess to any underinsured motorist coverage which applies to the vehicle as primary coverage, but

b. only in the amount by which it exceeds the primary coverage."

Attached as exhibit B to the complaint is an insurance policy issued by Worldwide and naming Reed Chester as the insured. That policy appears complete except pages 13 and 14. Under "PART C—UNINSURED MOTORISTS COVERAGE" there is a subsection entitled "OTHER INSURANCE." This subsection provides:

"If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."

State Farm filed an answer in which it admitted that it is obligated to pay a *pro rata* share of the plaintiff's claim but only after a setoff for payments made under Lopez's policy. Worldwide filed an answer and also filed an affirmative defense wherein it claimed it was entitled to a setoff for the entire amount paid to the plaintiff on behalf of Lopez.

After considering the written briefs submitted by the parties, the court entered its written order on July 11, 1991. The court found that State Farm's policy is ambiguous, that it is the primary insurer, that

it is liable to the plaintiff in the amount of $100,000, and that it is not entitled to any setoff. The court further ruled that Worldwide is an excess insurer and that it is liable in the amount of $25,000 after deducting a $25,000 setoff from its $50,000 policy limit.

On August 9, 1991, State Farm filed its notice of appeal. On August 26, 1991, State Farm filed its motion seeking an order approving its insurance policy as bond and staying enforcement of the judgment. On that same date, the court entered a written order denying State Farm's motion and also denying the "plaintiff's motion for sanctions." The record does not indicate whether the plaintiff made an oral or written motion for sanctions or when such motion was made.

We first address the issue of whether the trial court properly entered a judgment awarding the plaintiff monetary damages. In that regard, State Farm contends that the plaintiff was not entitled to a money judgment because she did not ask for one in her pleadings and because its insurance policy required arbitration to determine the exact amount of underinsured coverage available to the plaintiff.

■ Section 2—701 of the Code of Civil Procedure provides, in pertinent part, that a "court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments." (Ill. Rev. Stat. 1989, ch. 110, par. 2—701(a).) It is within the power of the trial court, in rendering declaratory relief, to grant the relief necessary and proper to the determination of the controversy before it. (*Vinyard v. Vaught* (1985), 138 Ill. App. 3d 641, 645-46.) Such relief may include the entry of a money judgment. (*Burgard v. Mascoutah Lumber Co.* (1955), 6 Ill. App. 2d 210, 218-19.) On the other hand, an issue not presented by the pleadings and not fully tried cannot be decided in a declaratory judgment action. (20 J. Appleman, Insurance Law & Practice §11379, at 483-84 (1980).) Issues for which no relief has been sought will generally not be considered. 20 J. Appleman, Insurance Law & Practice §11379, at 484 (1980).

In this case, the only allegation pertaining to the precise amount of the plaintiff's damages states that the "total amount of damages by [the plaintiff] thus far are in excess of FORTY THOUSAND DOLLARS ($40,000.00) and will continue to rise." The complaint also alleges that the value of the plaintiff's claim is in excess of the total limits of liability for underinsured motorist coverage under both of the defendants' liability insurance policies. There are no other allegations pertaining to the extent of damages suffered by the plaintiff. Likewise, there is absolutely no evidence of the precise damages the plaintiff incurred as a result of the automobile accident. Any attempt at

ascertaining the plaintiff's damages would be nothing more than mere speculation.

■ Nevertheless, the trial court ruled that State Farm was "liable to plaintiff in the sum of $100,000.00" and that Worldwide was liable in the sum of $25,000.00 after taking a $25,000.00 set-off." While the trial court clearly had the authority to declare the potential extent of State Farm's coverage liability under its insurance policy, it lacked any basis to find the liability to be $100,000. There was simply no evidence establishing that the plaintiff suffered damages to the extent that State Farm would necessarily be liable for the entire amount of its coverage potential. While there may be certain circumstances in which it would be appropriate for the trial court to award money damages as part of a declaratory judgment, it is not proper where there is no evidence to substantiate what the precise extent of the money judgment should be. We must reverse, therefore, the order of the trial court to the extent it finds State Farm liable to the plaintiff for $100,000. That does not dispose of this case, however, as we must determine whether the trial court abused its discretion in ruling that State Farm had potential coverage of $100,000 as the primary insurer and was not entitled to a setoff.

As to the question of whether State Farm had potential coverage of $100,000 as the primary insurer, State Farm argues that the relevant provisions of its policy are not ambiguous. It further maintains that the policy expressly states it shall be excess to any primary coverage and that there is no language that can be construed as stating that it applies as primary coverage. The plaintiff responds that the State Farm policy is ambiguous and that State Farm is the only insurer that could possibly be considered primary under the circumstances.

■ Generally, if a provision of an insurance contract can reasonably be said to be ambiguous it will be construed in favor of the insured and against the insurer. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 4.) If the provisions of the insurance policy are clear and unambiguous, however, there is no need for construction, and the provisions will be applied as written. (*Schnackenberg*, 88 Ill. 2d at 4-5.) All of the provisions of an insurance contract should be read together to interpret it and to determine whether an ambiguity exists. (*Schnackenberg*, 88 Ill. 2d at 5.) The words in the policy should be given their plain and ordinary meaning, and the court should not search for an ambiguity where none exists. (*Schnackenberg*, 88 Ill. 2d at 5.) The construction of an insurance contract and the determination of the rights and obligations of the parties to the

contract are questions of law, the determination of which rests exclusively with the court. (*Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 58.) Such a determination is subject to our review *de novo. Monsalud v. State Farm Mutual Automobile Insurance Co.* (1991), 210 Ill. App. 3d 102, 106.

Whether an insurance policy is primary or excess depends on the terms of the policy. (*Putzbach v. Allstate Insurance Co.* (1986), 143 Ill. App. 3d 1077, 1082.) In this regard, State Farm points to that part of its policy which provides that the policy is "excess to any underinsured motor vehicle coverage which applies to the *vehicle* as primary coverage." (Emphasis added.) It is State Farm's argument that this language is unambiguous, and therefore, because Worldwide's policy provides underinsured coverage to the plaintiff, State Farm's policy is excess rather than primary.

We agree with State Farm that this provision is unambiguous. It clearly renders the State Farm policy as excess coverage to any underinsured coverage applicable to the "vehicle" as primary coverage. The "vehicle" referred to is a vehicle occupied by the insured which is not the insured's car. In this case, the "vehicle" is the one owned by Jon Hiltibran in which the plaintiff was a passenger at the time she received her injuries. Thus, the only way the State Farm policy could be excess coverage would be if there was underinsured motor vehicle coverage applicable to Jon Hiltibran's vehicle. Moreover, under this clause the State Farm policy would only be excess to the primary underinsured coverage on Hiltibran's vehicle and not to any other insurance coverage applicable to the plaintiff. Because there is no evidence in this record to show whether there was underinsured coverage applicable to Hiltibran's vehicle, there is no basis to conclude that State Farm's policy provided excess coverage. Thus, State Farm's underinsured coverage was primary.

On the other hand, the "other insurance" portion of the Worldwide policy provides that "any insurance [Worldwide] provide[s] with respect to a vehicle you do not own shall be excess over any other collectible insurance." The plaintiff did not own the vehicle in which she was riding when she was injured. Furthermore, State Farm, as primary insurer, was a source of collectible insurance. Consequently, the Worldwide policy was clearly excess under these circumstances. We therefore affirm the trial court's ruling that State Farm was the primary insurer and Worldwide the excess insurer.

Lastly, we address the issue of whether the trial court properly applied the $25,000 setoff only to the excess coverage of Worldwide. Our research does not indicate any Illinois case directly address-

ing this issue. Nevertheless, we are able to resolve the issue based on our reading of section 143a—2(3) of the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(3)).

When an insurance policy is issued, applicable statutory provisions in effect at the time are treated as part of the policy. (*Pick v. Associated Indemnity Corp.* (1989), 191 Ill. App. 3d 121, 125; see *American Family Mutual Insurance Co. v. Baaske* (1991), 213 Ill. App. 3d 683, 688.) Section 143a—2(3) of the Code, in effect at the time both policies were issued, provides in pertinent part:

> "(3) *** For the purpose of this Act the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle." Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(3).

Pursuant to section 143a—2(3), there can be no underinsured motorist coverage, notwithstanding the stated policy limit, if the insured recovers under a bodily injury liability insurance policy in an amount equal to or greater than the stated underinsured policy limit. More importantly, the particular limits of any underinsured motorist coverage are established by the difference between the amount recovered by the plaintiff from a bodily injury liability insurance policy and the stated limit for the underinsured motorist coverage. Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(3); *Rutter v. Horace Mann Insurance Co.* (1989), 190 Ill. App. 3d 467, 481-82.

Thus, in the present case, the limits of liability for the underinsured motorist coverage provided in State Farm's policy would be the difference between the stated policy limit of $100,000 and the $25,000 the plaintiff recovered from Lopez's bodily injury liability policy. Under these circumstances, the limit of the underinsured motorist coverage under State Farm's policy is $75,000.

Such a result does not work an injustice against the plaintiff as she is simply receiving the benefit of the bargain in light of the statutes that existed at the time the policies were entered into. The limit of underinsured motorist coverage in a given policy of insurance, by its statutory nature, can only be defined at the time a particular insured recovers under an applicable bodily injury policy. In some instances the insured may recover nearly the entire amount of the underinsured coverage, and in other circumstances she will recover nothing. If a particular insured desires to create a greater likelihood of recovering under an underinsured motorist provision, she need only pay an increased premium and obtain a higher limit of coverage. Accordingly, we hold the trial court erred in failing to reduce State Farm's coverage limit under the underinsured motorist provision by the $25,000 plaintiff received from Lopez's bodily injury insurance policy.

For the foregoing reasons, we reverse that part of the order of the circuit court of Lake County finding State Farm liable in the amount of $100,000 and ruling that the limit of coverage under the underinsured motorist provision of the State Farm policy was $100,000. We affirm that part of the order finding State Farm to be the primary insurer.

Affirmed in part; reversed in part.

WOODWARD and DOYLE, JJ., concur.