KIRK ROBERTS, Plaintiff-Appellee, v. NORTHLAND INSURANCE COMPANY *et al.*, Defendants-Appellants (Great West Casualty Company, Defendant).

Third District   Nos. 3—96—0872, 3—96—0914 cons.

Opinion filed August 29, 1997.

HOMER, J., concurring in part and dissenting in part.

Karen L. Kendall and Craig L. Unrath (argued), both of Heyl, Royster, Voelker & Allen, of Peoria, and John E. Kerley, of Heyl, Royster, Voelker & Allen, of Springfield, for appellant Northland Insurance Company.

David E. Krchak, of Thomas, Mamer & Haughey, of Champaign, for appellant Chicago Motor Club Insurance Company.

Edward R. Durree (argued) and James P. Lawson, both of Kingery, Durree, Wakeman & Ryan, of Peoria, for appellee.

JUSTICE MICHELA delivered the opinion of the court:

In January 1996, plaintiff filed a declaratory judgment action in the circuit court of Peoria County. He sought a determination of the amount of setoff to be applied to underinsured motorist coverage in two separate insurance policies issued to him by Northland Insurance Co. (Northland) and Chicago Motor Club Insurance Co. (CMCI). In a consolidated appeal, the companies contend that the court erred in finding that only CMCI was entitled to exclusive setoff of $196,114.26 in net workers' compensation benefits (WC benefits); and in finding that a setoff for social security disability benefits (SSD benefits) is not allowable as a matter of public policy.

## Facts

In December 1993, while driving a semi-trailer truck for his employer, plaintiff was involved in a motor vehicle accident with Thomas Fortune (Fortune), an underinsured motorist. Plaintiff was insured by defendants Northland, CMCI, and Great West Casualty Co. (GWC). Each provided underinsured motorist coverage in the respective amounts of $500,000, $300,000, and $20,000.

Plaintiff received the following: a $50,000 limit from Fortune's liability policy; a settlement from GWC, which was voluntarily dismissed; $246,114.26 in WC benefits, which was reduced by the $50,000 received from Fortune, for a net benefit of $196,114.26; and SSD benefits of $301 per month commencing in June 1994 and increasing to $324 per month in December 1994.

Northland and CMCI's policies were similar in that each provided that their limits for underinsured motorist coverage were to be reduced by any amounts received from a tortfeasor, WC benefits, disability benefits or similar law. The companies claim that they are each entitled to a setoff for the money received from Fortune, WC benefits, and SSD benefits. Plaintiff asserts that defendants are jointly

entitled to only one setoff for the net WC benefits and that it should be applied to CMCI, the primary carrier, or that the single setoff should be prorated between Northland and CMCI.

The circuit court found and ordered that only CMCI was entitled to a setoff for the net WC benefits of $196,114.26 and that policy provisions allowing a setoff for SSD benefits were against public policy. Defendants' consolidated appeal follows.

## Analysis

■ The legislative intent in providing for underinsured motorists is to place the insured in the position he would have been in had he been injured by a motorist who carried liability insurance in the same amount as his underinsured motorists coverage. *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992).

The limits of underinsured motorist coverage are the difference between the amount plaintiff receives from a bodily injury liability policy and the stated limit for the underinsured motorist coverage. 215 ILCS 5/143a—2(4) (West 1996); *Chester v. State Farm Mutual Automobile Insurance Co.*, 227 Ill. App. 3d 320, 327 (1992).

■ This court, in *Adolphson v. Country Mutual Insurance Co.*, 187 Ill. App. 3d 718, 721 (1989), held that the "limits of coverage" refers to the highest amount that the insurer providing underinsured motorist coverage must pay. This court noted, "the statute does not set a minimum, or floor, but rather a maximum, or ceiling. Nothing in the statute prevents the insurer from reducing its liability by amounts paid under other coverages in the same policy." *Adolphson*, 187 Ill. App. 3d at 721.

Importantly, there is no existing public policy in Illinois demanding that an insured receive the maximum limits of its underinsured motorist coverage. *Luechtefeld v. Allstate Insurance Co.*, 167 Ill. 2d 148, 158 (1995).

■ Further, parties to a contract may agree to any terms not contrary to public policy. *Sulser*, 147 Ill. 2d at 559. Public policy must be determined by the constitution, laws, and judicial decisions, as opposed to the opinions of laymen, attorneys or judges as to the demands of the public interests. *American Federation of State, County & Municipal Employees v. State of Illinois*, 124 Ill. 2d 246 (1988).

## Single v. Multiple Setoff

Plaintiff contends that to allow a multiple setoff would fail to place him in the position that he would have been in had Fortune carried liability insurance in the amount of his $800,000 underinsured motorists coverage.

■ Plaintiff's contention would have merit had he elected to

contract for an underinsured motorist policy of $800,000 with one insurer. In that situation, he would have been guaranteed a single setoff. Instead, plaintiff elected to contract with two separate insurers, under two separate sets of terms, yet similar setoff conditions, for coverage amounts of $500,000 and $300,000, respectively. *Luechtefeld*, 167 Ill. 2d at 158-59 (public policy does not require invalidation of clearly written policy language to avoid disappointing the insured); *Schoonover v. American Family Insurance Co.*, 214 Ill. App. 3d 33, 43 (1991), *appeal denied*, 141 Ill. 2d 560 (1991) (insured is charged with notice of policy content.)

Relying on *Chester*, 227 Ill. App. 3d at 327-28, and *Obenland v. Economy Fire & Casualty Co.*, 234 Ill. App. 3d 99 (1992), Northland asserts that the court erred in reading its policy in conjunction with CMCI's policy, and ruling that a single setoff applied to CMCI. We agree.

In *Chester*, the trial court awarded a single setoff to an excess carrier. On appeal, the primary carrier argued that it was also entitled to a setoff. The appellate court agreed and stated that the limit of underinsured motorist coverage is established by statute and that it was proper to reduce the primary carrier's coverage by the amount paid by the tortfeasor. Nothing in *Chester* indicates that the court reversed the setoff allowed to the excess carrier.

In *Obenland*, plaintiffs had two separate $300,000 policies of insurance, with each containing an "other insurance" clause that stated each insurer would only be responsible for its proportionate share of total damages. Despite plaintiffs' argument to the contrary, the court found no ambiguity in either policy and held that each insurer was entitled to a $200,000 setoff. This setoff left each insurer responsible for $100,000, which was then reduced by the "other insurance" clause to a proportionate share of $50,000 each.

In the instant case, Northland's policy makes no reference to terms or conditions of any other policy. Northland urges this court to follow *Chester* and *Obenland*. As we have found no Illinois law that requires setoffs only be applied to primary carriers, or that multiple policies must be treated as one combined policy, we find that both Northland and CMCI are entitled to rely upon the terms of their policies and each apply a setoff to their limits.

In turning to the amount of setoff, both companies' policies provide that limits for underinsured motorist coverage may be set off by amounts received from a tortfeasor, WC benefits, disability benefits or similar law.

### $50,000 from Fortune

Defendants contend the court erred in finding that because the

$50,000 paid by Fortune was applied to plaintiff's workers' compensation lien, those funds were not entitled to setoff by either company. We find that the court properly reasoned a carrier may not claim a setoff that is greater than the amount actually received by plaintiff. Here, plaintiff did not actually recover the $50,000 from Fortune. Instead, the $50,000 was applied in part to his attorney fees and the remaining amount to his workers' compensation carrier pursuant to its statutory lien. Therefore, we find that the court did not err in denying a setoff of the $50,000 paid by Fortune.

## WC benefits

WC benefits paid to an insured individual and set off from the limits of his underinsured motorists coverage do not violate public policy. *Sulser*, 147 Ill. 2d at 558. In *Sulser*, the court allowed the entire amount of WC benefits paid to that plaintiff to be set off from the limits of the underinsured motorists coverage. Here, as plaintiff agreed to policy terms that provided for setoff of WC benefits, and as our supreme court in *Sulser* found such setoff did not violate public policy, the court did not err in allowing CMCI to set off $196,114.26 in net WC benefits; a setoff to which Northland is also entitled.

## SSD benefits

In order to be eligible to receive SSD benefits, one must be "insured for disability purposes" (42 U.S.C.A. § 423(a)(1) (West Supp. 1997)) and be fully insured for SSD benefits (42 U.S.C.A. § 423(c)(1) (West Supp. 1997)). If these requirements are not met, no SSD benefits will be paid. Therefore, it appears that SSD benefits are insurance benefits and not general welfare benefits.

In contending that a setoff for SSD benefits does not violate public policy, the companies compare SSD benefits to WC benefits. A deduction for WC benefits, as determined by our supreme court in *Ullman v. Wolverine Insurance Co.*, 48 Ill. 2d 1 (1970), does not violate public policy for the reason that the recipient must reimburse the employer for any recovery he receives from a third-party tortfeasor. The recipient may retain only the amount received that exceeds the WC benefits. Since the recipient does not actually receive the WC benefits, allowing the insurer to deduct such payments from benefits to be paid places the insured in the same position he would have occupied if the tortfeasor had not been underinsured.

*Sulser* appears to adopt the reasoning of *Ullman*, the essential part of which is that the deductibility of benefits is based on reimbursement. Although SSD benefits are derived from a federal insurance plan, unlike WC benefits, the insured is not required to repay SSD benefits from proceeds received. Therefore, following *Ullman*, a

setoff for these benefits would not appear justified, and the court did not err in so finding.

## Conclusion

Based on the foregoing, we affirm that part of the court's order that denied a setoff of the $50,000 received from Fortune and denied a setoff of SSD benefits, but that allowed CMCI a setoff of $196,114.26 in net WC benefits; we reverse that part of the court's order that did not allow Northland any setoff, finding that it was entitled to a setoff of $196,114.26 in net WC benefits.

Affirmed in part; reversed in part.

BRESLIN, J., concurs.

JUSTICE HOMER, specially concurring in part and dissenting in part:

I would affirm the trial court's holding in its entirety. I disagree with the majority that both insurers are entitled to a setoff for the workers' compensation award and would allow only the primary insurer the setoff. However, I agree that the setoff cannot include payment by the tortfeasor that was applied to a workers' compensation award pursuant to statute. I also agree that a setoff for social security disability benefits cannot be allowed.

As the majority notes, the primary purpose in construing an insurance policy is to give effect to the intention of the parties as expressed in the agreement. *De Los Reyes v. Travelers Insurance Cos.*, 135 Ill. 2d 353, 358, 553 N.E.2d 301, 304 (1990). Where the language of a policy is clear and unambiguous, the policy must be enforced as the plain meaning dictates. *United States Fire Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1, 4-5, 429 N.E.2d 1203, 1205 (1981). However, the language of a policy must be read in reference to the facts of the case, the policy holder's reasonable expectations, the public policy behind the applicable statutes, and the coverage intended by the policy itself. See *Hoglund v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. 2d 272, 279, 592 N.E.2d 1031, 1034 (1992).

When an insurance policy is issued, the applicable statutory provisions in effect at the time are treated as part of the policy. *Pick v. Associated Indemnity Corp.*, 191 Ill. App. 3d 121, 125, 547 N.E.2d 555, 558 (1989). In this case, the public policy underlying the underinsured motorist statute is evidenced by the legislative intent in enacting that statute. *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 591 N.E.2d 427 (1992).

The intent of the legislature in enacting the underinsured motorist statute was to place the injured policy holder in the same financial position he would have occupied had he been injured by a motorist who carried liability insurance in the same amount as the policy holder. *Sulser*, 147 Ill. 2d 548, 591 N.E.2d 427. To implement this intent, a plaintiff must be placed in the same financial position he would have been in had the tortfeasor carried liability insurance with limits equal to the plaintiff's underinsured motorist coverage. In the instant case, the plaintiff had two policies, a primary policy with coverage of $300,000 and an excess policy with coverage of $500,000. If the tortfeasor had $800,000 in coverage, then the amount paid by the tortfeasor's insurance carrier could be reduced by the workers' compensation award only once. If both CMCI and Northland are allowed to take the setoff, the $800,000 coverage would be reduced twice. Therefore, the literal interpretation of the policies should not be enforced since that would contravene the intent of the underinsured motorist statute by placing the plaintiff in a worse financial position. The trial court used this analysis and correctly concluded the defendant insurers should not both be allowed to apply the setoff.

Furthermore, an insurance policy that is ambiguous or susceptible of at least two reasonable interpretations should be construed in favor of the insured. *Hall v. Burger*, 277 Ill. App. 3d 757, 761, 660 N.E.2d 1328, 1331 (1996). A "latent ambiguity" exists when the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or choice from two or more possible meanings. *Hoglund*, 148 Ill. 2d at 279, 592 N.E.2d at 1034-35, citing Black's Law Dictionary 102 (3d ed. 1933).

When the setoff provisions of the defendants' policies are read together with the present fact situation, it is apparent that the following choices of possible meanings exist: (1) both insurers are entitled to claim a setoff for the entire amount recovered; (2) both insurers are entitled to a *pro-rata* setoff; (3) CMCI is entitled to the setoff because of its position as the primary insurer; or (4) Northland is entitled to the setoff because of its position as excess insurer. Consequently, a latent ambiguity exists. Therefore, the policies should be construed to allow but one setoff.

If we accept that only one setoff of the workers' compensation award may be taken for a plaintiff to be fully compensated for his injury, we must determine which insurer is entitled to take the setoff. The trial court followed the rationale of *Cobb v. Allstate Insurance Co.*, 663 A.2d 38 (Me. 1995), a Maine case similar to the case at bar. In *Cobb*, the Supreme Judicial Court of Maine held the primary

carrier was entitled to 100% of the setoff, and the excess carrier was not entitled to any portion of the setoff. The Maine court reasoned that the excess insurer has no liability until the primary coverage is exhausted, and the primary insurer should receive the setoff because of the greater risk it faces. The Maine decision appears to be in accord with the majority of jurisdictions that have considered the issue. I would adopt the *Cobb* rationale.

Northland and the majority cite *Chester v. State Farm Mutual Automobile Insurance Co.*, 227 Ill. App. 3d 320, 591 N.E.2d 488 (1992), as support for the proposition that both the primary and the excess carriers are entitled to take the setoff. The majority notes *Chester* resulted in a dual setoff. However, the insurance company allowed the setoff by the appellate court in *Chester* was the primary carrier, and the excess carrier allowed the setoff by the trial court was not a party to the appeal. Consequently, the issue of whether the excess carrier was also entitled to the setoff was not addressed by the appellate court in *Chester*.

Similarly, the majority's reliance upon *Obenland* is misplaced. *Obenland v. Economy Fire & Casualty Co.*, 234 Ill. App. 3d 99, 599 N.E.2d 999 (1992). *Obenland* involved insurance provisions precluding stacking of coverage and "other insurance" clauses that are not involved in this case.

For the foregoing reasons, I respectfully dissent with that part of the majority's opinion allowing both defendants a setoff for the workers' compensation award. I would allow only a single setoff to the primary insurer CMCI.