**PROGRESSIVE SPECIALTY INSURANCE COMPANY, Plaintiff–Appellant and Cross–Appellee,**

v.

**HARTFORD UNDERWRITERS INSURANCE COMPANY, Defendant–Appellee and Cross–Appellant,**

**and**

**Eric Barnes and Amy M. Barnes, Defendants–Appellees.**

No. 05CA1161.

Colorado Court of Appeals, Div. V.

Oct. 19, 2006.

Seaman, Giometti & Murphy, P.C., Gregory R. Giometti, Greenwood Village, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Burg Simpson Eldredge Hersh & Jardine, P.C., Diane Vaksdal Smith, Keith Van Doren, Englewood, Colorado, for Defendant–Appellee and Cross–Appellant.

Alan E. Johnson, Durango, Colorado; Shawn E. McDermott, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge FURMAN.

In this declaratory judgment action, plaintiff, Progressive Specialty Insurance Company, and defendant Hartford Underwriters Insurance Company both appeal, the trial court's partial summary judgment in favor of defendants Amy M. and Eric Barnes. We affirm in part, reverse in part, and remand.

## I. Background

The underlying facts are not in dispute. In November 2002, Anne Marie Glover, a passenger in a motor vehicle, was killed in a single-car accident when an intoxicated driver, Edward Starns, drove off the road. Starns was insured for liability with a policy limit of $250,000 per person. Amy and Eric Barnes, the natural children of Glover, each received $125,000, which was a settlement in the full amount of the liability policy.

Glover was insured with Hartford for underinsured motorist (UIM) protection with a per-person limit of $250,000. Amy Barnes, as a resident relative of Glover, was insured under the terms of the Hartford policy.

Amy Barnes also had UIM coverage with Progressive with a per-person limit of $100,000. Glover, as a resident relative of Amy Barnes, was insured under the terms of the Progressive policy.

Amy Barnes made claims against both Hartford and Progressive, seeking UIM benefits. Both insurers denied the claims on the ground that Glover was not killed in an accident involving an "underinsured" motor vehicle.

Thereafter, Progressive brought this declaratory judgment action against Amy Barnes and Hartford, asserting that (1) under both § 10–4–609(4), C.R.S.2006, and the Progressive policy, no UIM coverage existed for Amy Barnes because the limits of the policy were less than the amount she had already received as a result of the death of Glover and (2) Hartford, not Progressive, owed Amy Barnes UIM coverage.

Hartford contended that Progressive lacked standing to make such a claim; that no UIM coverage existed for Amy Barnes under its policy because the limits of its policy were equal to the limits of Starns's policy and, thus, that Starns's vehicle was not underinsured. Hartford alternatively contended that, if coverage were triggered, its policy was primary to that of Progressive and, thus, that Hartford was entitled to offset the amount received from the tortfeasor against the UIM coverage. Hartford also moved to join Eric Barnes as an indispensable third party.

After the trial court added Eric Barnes as an indispensable third party, the Barneses filed counterclaims and a motion for summary judgment, asserting that under § 10–4–609(2), C.R.S.2006, they were entitled to stack the UIM limits under the Progressive policy with the UIM limits under the Hartford policy to determine the underinsured status of Starns's vehicle. The trial court granted summary judgment in favor of the Barneses on this basis.

Hartford then filed a motion to amend the judgment, again asserting its primacy argument. The court denied the motion, finding that the Hartford policy's "other insurance" provisions provided that its coverage was

excess as to a nonowned vehicle, thus rendering it co-primary with Progressive. The court determined that the $250,000 offset should be prorated between the Hartford and Progressive policies according to their respective UIM limits.

## II.   Policy Stacking

Hartford and Progressive contend that the trial court erred in granting summary judgment in favor of the Barneses on the stacking issue. We disagree.

### A.   Standard of Review

We review de novo a trial court's summary judgment. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66 (Colo.2004). Summary judgment is appropriate when the pleadings and supporting documents clearly demonstrate that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814 (Colo.2004). The nonmoving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. *Martini v. Smith*, 42 P.3d 629 (Colo.2002).

The parties agree that when comparing the limits of Starns's liability policy with the limits of either individual UIM policy, Starns's vehicle would not be underinsured. However, they disagree whether the individual UIM limits should be stacked to determine underinsured status. Hartford and Progressive contend that language in Colorado's UIM statute bars such stacking. We disagree.

### B.   Statutory Language

Hartford and Progressive contend that, in determining whether an underinsured vehicle is involved, § 10–4–609(4) requires comparing the liability policy limits to each individual UIM policy. We disagree.

We review de novo issues of statutory interpretation. *State ex rel. Salazar v. Cash Now Store, Inc.*, 31 P.3d 161, 164 (Colo.2001). When interpreting a statute, "a court's essential task is to determine and give effect to the intent of the legislature." *People v. Goodale*, 78 P.3d 1103, 1107 (Colo.2003). To accomplish this task, we must first examine the plain language of the statute itself. If the language is "clear and unambiguous," we must interpret it as written. *People v. Goodale, supra*, 78 P.3d at 1107.

Colorado permits the stacking of automobile insurance policies, absent legislation to the contrary. *State Farm Mut. Auto. Ins. Co. v. Stein*, 940 P.2d 384 (Colo.1997).

Section 10–4–402(3.5) defines "stacking" as "aggregating, combining, multiplying, or pyramiding limits of separate policies providing uninsured and underinsured motorist coverage as provided in section 10–4–609 [C.R.S. 2006]."

Section 10–4–609 provides, in relevant part:

> (2) . . . . A policy may contain provisions which prohibit stacking the limits of more than one uninsured motorist coverage policy as provided in this section, if such provisions are included in a single policy covering multiple vehicles or in multiple policies issued by one insurer or an affiliated insurer, under common ownership or management, to an insured or to a resident relative of such insured. *Such provisions shall not prohibit stacking of the uninsured or underinsured portions of a policy issued to an insured and a separate policy covering the insured which was not issued to the insured or a resident relative.* For purposes of this subsection (2), underinsured motorist coverage is included in the term "uninsured motorist coverage" pursuant to subsection (4) or this section.
>
> . . . .
>
> (4) Uninsured motorist coverage shall include coverage for damage for bodily injury or death which an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident, but the limits of liability for bodily injury

or death under such insurance or bonds are:

(a) Less than the limits for uninsured motorist coverage under the insured's policy; or

(b) Reduced by payments to persons other then an insured in the accident to less than the limits of uninsured motorist coverage under the insured's policy.

(Emphasis added.)

■ The Barneses contend that, because Amy Barnes and Glover had separate policies, § 10–4–609(2) permits stacking a policy issued by Progressive upon a policy issued by Hartford. Hartford and Progressive contend otherwise, arguing that the language of § 10–4–609(4) requires a comparison between the tortfeasor's liability limit and the limit of each UIM policy on a policy-by-policy basis. We agree with the Barneses.

In *In re State Farm Mutual Automobile Insurance Co. v. Progressive Mutual Insurance Co.,* 148 P.3d 117, 2006 WL 2589162 (Colo. No. 05SA369, Sept. 11, 2006), the supreme court interpreted this statute when it considered the apparent conflict between subsections (2) and (4):

> We conclude that by specifying the amount of underinsured motorist coverage an insurer must offer the named insured, as well as the conditions under which the insurer may restrict its liability for injuries caused by underinsured motorists to the limits of a single policy covering the insured, subsection (2) of the statute is integral to the meaning of the phrase, "limits for uninsured motorist coverage under the insured's policy," in subsection (4), and therefore to the determination whether a motor vehicle is in fact underinsured. Considered as a whole, the provisions of section 10–4–609, C.R.S. (200[6] ), indicate that a tortfeasor's motor vehicle is underinsured whenever the limits of liability against which its use is insured are less than the sum of the underinsured motorist coverage declared in the injured party's policy and the underinsured motorist coverage declared in all other applicable policies.

. . . .

Understanding the word "limits" in subsection (4)(a) to intend the full amount of uninsured motorist coverage allowed by the injured party's entire policy, including those terms and conditions permitting (as required by statute) the aggregation of limits from certain other policies, serves to avoid conflict between subsections (2) and (4). By contrast, treating the word "limits" as a reference to nothing more than the coverage limits appearing in the declarations of the injured party's policy would result in an open conflict with the stacking protections of subsection (2), or at best, impose a limitation on either subsection (2) or the definition of stacking itself, not found in the language of either provision.

. . . .

Although subsection (4)'s definition of uninsured motor vehicles may be susceptible of more than one reasonable interpretation, when construed in light of the related provisions of section 10–4–609, the history of the section's amendments, and the policy considerations supporting them, it must be construed to intend that the initial determination whether a tortfeasor's vehicle is underinsured be made by comparing the liability limits of the tortfeasor's vehicle with the sum of the uninsured or underinsured portions of the injured party's policy and the uninsured or underinsured portions of any other applicable policies.

Accordingly, for the reasons set forth by the supreme court in *In re State Farm,* we conclude that the trial court was correct in allowing stacking of the Hartford and Progressive policies. Thus, the trial court properly granted summary judgment in favor of the Barneses.

III. Coverage Offsets

Hartford next contends that even if stacking is permitted, the trial court erred in finding that its policy was co-primary with the Progressive policy, and in prohibiting Hartford from obtaining a full setoff against the tortfeasor's $250,000 payment. We agree.

■ We review a trial court's interpretation of an insurance contract de novo, and we look to the language of the contract to establish the intent of the parties. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294 (Colo.2003); *Bush v. State Farm Mut. Auto. Ins. Co.*, 101 P.3d 1145 (Colo.App. 2004).

■ We give the words their plain meaning, avoid strained and technical interpretations, and construe the contract as would a reasonable person of ordinary intelligence. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, *supra*; *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236 (Colo.1992); *First Fin. Ins. Co. v. Albertson's, Inc.*, 91 P.3d 470 (Colo.App.2004). We also read the provisions of the policy as a whole and construe it so that all provisions are harmonious and none is rendered meaningless. *Bush v. State Farm Mut. Auto. Ins. Co.*, *supra*.

■ Generally, whether an insurance policy is primary or excess depends on the terms of the policy. *See* § 10–4–609(2); *Allstate Ins. Co. v. Avis Rent–A–Car Sys., Inc.*, 947 P.2d 341, 343 (Colo.1997). In this regard, Hartford points to Progressive's "other insurance" clause, which provides that "[a]ny insurance [Progressive] provide[s] shall be *excess over any other uninsured or underinsured motorist coverage*, except for bodily injury to [the insured] or a relative when occupying a covered vehicle," and to the part of its own policy which provides that the policy is "excess over any collectible insurance providing such coverage *on a primary basis*." (Emphasis added). Hartford contends that, because the Progressive policy specifically states that it is excess to all other policies, and the Hartford policy states it is only excess over a primary policy, the two cannot, as a matter of law, be co-primary and the trial court erred in so concluding. We agree.

The parties agree that the Progressive policy is an excess policy. The Hartford policy, however, only provides excess coverage to any UIM coverage applicable to a vehicle not owned by the insured. Here, the vehicle at issue is the one owned by Starns and in which Glover was a passenger at the time of her death. Thus, the only way that the

Hartford policy could be excess coverage would be if there were UIM coverage applicable to Starns's vehicle. And, the Hartford policy would be excess only to the primary UIM coverage on Starns's vehicle.

Because there was no evidence that Starns's liability policy provided UIM coverage, and because Glover was an occupant in a vehicle not covered by Hartford, there is no basis to conclude that Hartford's policy provided excess coverage. Thus, we conclude the Hartford policy is the primary policy. *See Chester v. State Farm Mut. Auto. Ins. Co.*, 227 Ill.App.3d 320, 326, 169 Ill.Dec. 315, 591 N.E.2d 488, 492 (1992).

Nonetheless, Progressive contends that, if Hartford's coverage is primary, based on paragraph 3 of the Hartford policy's "other insurance" provision, Hartford has the sole obligation to pay the Barneses until the limits of its policy are exhausted. We are not persuaded.

As pertinent here, paragraph 3 of Hartford's policy provides:

> If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy . . .
>
> 3. The loss will be paid in accordance with the following procedure:
>
> a. All applicable policies we will pay on an equal basis with all other policies providing coverage *on the same level or priority*, either primary or excess, until the policy with the lowest limit of liability is exhausted.

(Emphasis added.)

By its plain terms, paragraph 3(a) only applies to proration of payments when all the policies provide coverage on the same level of priority, whether it is primary or excess. Because the Hartford policy is primary and the Progressive policy is excess, the policies are not the same level of priority. Thus, paragraph 3(a) does not apply.

Hartford also contends that it was entitled to an offset under § 10–4–609(5), C.R.S.2006, and the policy language, because, as the pri-

mary insurer, it bore the greater risk. Again, we agree.

An insurer is entitled to offset its liability pursuant to § 10–4–609(5), which provides:

The maximum liability of the insurer under the uninsured motorist coverage provided shall be the lesser of:

(a) The difference between the limit of uninsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or

(b) The amount of damages sustained, but not recovered.

Likewise, the Hartford policy provides that the limit of liability shall be reduced by sums paid "because of the bodily injury by or on behalf of persons or organizations who may be legally responsible."

Pursuant to § 10–4–609(5), the limits of UIM coverage are the difference between the amount recovered under a bodily injury liability policy and the policy limit of UIM coverage. Thus, there can be no UIM coverage, notwithstanding the stated policy limit, if the insured recovers under a bodily injury liability insurance policy in an amount equal to or greater than the stated UIM limit. *See Chester v. State Farm Mut. Auto. Ins. Co., supra,* 227 Ill.App.3d at 327, 169 Ill.Dec. 315, 591 N.E.2d at 493.

Here, the limits of liability for the UIM coverage in Hartford's policy would be the difference between Hartford's stated UIM limit of $250,000 and the $250,000 recovered from Starns's liability policy. Under these circumstances, Hartford would be entitled to the full offset.

Such a result does not work an injustice against Progressive. As the primary carrier, Hartford faced the greater risk. Had Starns been uninsured, Hartford would be required to satisfy the Barneses' claim up to the full amount of its policy limits before the excess carrier, Progressive, was required to pay anything. Hence, the primary carrier should be the first to receive the benefit of the setoff. *See Roberts v. Northland Ins. Co.,* 185 Ill.2d 262, 271, 235 Ill.Dec. 579, 705 N.E.2d 762, 766 (1998).

Accordingly, that part of the judgment determining that the Hartford policy was co-primary with the Progressive policy is reversed. In all other respects, the judgment is affirmed, and the case is remanded with directions to award Hartford a full setoff against the tortfeasor's $250,000 payment and to enter such further orders as are consistent with this opinion.

Judge DAILEY and Judge HAWTHORNE concur.