**FIRE INSURANCE EXCHANGE,**
Plaintiff–Appellee,

v.

**William SULLIVAN, Defendant–Appellant.**

**No. 08CA1886.**

Colorado Court of Appeals,
Div. VI.

May 28, 2009.

Levy, Morse & Wheeler, P.C., Marc R. Levy, Scot C. Kreider, Heather E. Hackett, Englewood, Colorado; Patterson Nuss & Seymour, P.C., Franklin Patterson, Greenwood Village, Colorado, for Plaintiff–Appellee.

Roberts Levin Rosenberg, P.C., Bradley A. Levin, Michael J. Rosenberg, Zachary C. Warzel, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge LOEB.

In this insurance coverage dispute, defendant, William Sullivan, appeals the summary judgment entered in favor of plaintiff, Fire Insurance Exchange. We affirm.

## I. Background and Procedural History

This case arose out of an underlying civil action filed against Sullivan by S.J. (the victim) in 2005. In her complaint, the victim alleged that in February 2004, she and Sullivan traveled to Montana together. The complaint further alleged that, once they arrived, Sullivan asked the victim to share a hotel room with him, and the victim declined. Subsequently, Sullivan and the victim met for dinner. The complaint alleged that, at some point in the evening, Sullivan "secreted in the food or beverage consumed by [the victim] an unknown substance which would commonly be referred to as a 'date rape drug'" and that the victim awoke in a hotel room and "found [Sullivan] on top of her sexually penetrating her against her will."

In her complaint, the victim asserted three claims for relief based on the above-referenced conduct of Sullivan—assault and battery, extreme and outrageous conduct, and invasion of privacy. With respect to the invasion of privacy claim, the victim specifically alleged Sullivan "intentionally invaded" her privacy through such conduct, and it is undisputed that the addition of the invasion of privacy claim was intended to trigger insurance liability coverage, as discussed below.

At the time of the alleged incident in Montana, Sullivan was insured under a homeowner's insurance policy issued by Fire Insurance. The coverage section of the policy regarding personal liability provided:

We will pay those damages which an insured becomes legally obligated to pay because of bodily injury, property damage or personal injury resulting from an occurrence to which this coverage applies. Personal injury means an injury arising from:

(1) false arrest, imprisonment, malicious prosecution and detention.

(2) wrongful eviction, entry, *invasion of rights of privacy.*

(3) libel, slander, defamation of character.

(4) discrimination because of race, color, religion or national origin. Liability prohibited by law is excluded. Fines and penalties imposed by law are covered.

(Emphasis added.)

An occurrence was defined in the policy in relevant part as "an accident including exposure to conditions which results during the policy period in bodily injury or property damage."

As pertinent here, the exclusions section of the policy specifically excluded coverage for "bodily injury, property damage or personal injury which ... is either caused intentionally by or at the direction of an insured; or ... results from an occurrence caused by an intentional act of any insured where the results are reasonably foreseeable."

Initially, Fire Insurance retained counsel for Sullivan in the underlying lawsuit, under a reservation of rights. However, prior to the trial in that action, Fire Insurance determined the victim's claims were not covered by Sullivan's policy, based primarily on the above-referenced exclusion, and it consequently withdrew its defense of Sullivan. As a result, Sullivan retained the law firm initially retained by Fire Insurance to continue to represent him in the case.

At the conclusion of the underlying civil trial, a jury found in favor of the victim on all three claims and awarded damages on all three claims for a total of $213,512, including $198,000 for invasion of privacy.

Based on the jury award, Sullivan again requested that Fire Insurance indemnify him for the judgment and pay the fees and costs he incurred in defending himself against the victim's claims. In response, Fire Insurance filed this action, seeking a declaratory judgment that it had no duty to defend or indemnify Sullivan under the policy.

Apparently due to Sullivan's lack of funds, he and the victim then entered into a settlement agreement whereby Sullivan paid the victim $55,000 toward the judgment and dismissed his appeal of that judgment. Sullivan also agreed to pursue counterclaims against Fire Insurance in the declaratory judgment action to collect the remainder of the judgment and agreed to assign any proceeds he collected on the counterclaims to the victim. In compliance with the agreement, Sullivan

filed counterclaims against Fire Insurance for breach of contract and bad faith breach of insurance contract.

Subsequently, Fire Insurance filed a motion for summary judgment seeking a declaration that, as a matter of law, it had no duty to defend Sullivan. In a written order, the district court granted summary judgment in favor of Fire Insurance. Fire Insurance then filed a second motion for summary judgment on Sullivan's counterclaims, which the court also granted for the same reasons set forth in its earlier order. This appeal followed.

## II. Standard of Review and Applicable law

We review the grant of a summary judgment de novo. *Georg v. Metro Fixtures Contractors, Inc.*, 178 P.3d 1209, 1212 (Colo. 2008). Such a judgment is appropriate only if the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *W. Elk Ranch, L.L.C. v. United States*, 65 P.3d 479, 481 (Colo.2002). In determining whether summary judgment is proper, we give the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts must be resolved against the moving party. *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 146 (Colo.2007).

■ Whether claims against an insured are excluded from coverage by an insurance contract is a matter of law which we review de novo. *Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo.App.1998) *(Bentley )*.

■ When construing the terms of insurance policies, we apply principles of contract interpretation. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 819 (Colo.2004). We give the words of an insurance contract their plain meaning, avoiding strained and technical interpretations. *See Progressive Specialty Ins. Co. v. Hartford Underwriters Ins. Co.*, 148 P.3d 470, 474 (Colo.App.2006); *see also Bentley*, 953 P.2d at 1300. Although coverage provisions in an insurance contract are liberally construed in favor of the insured, courts

should be wary of rewriting provisions. *Bentley*, 953 P.2d at 1300; *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo.2003). Courts may neither add provisions to extend coverage beyond that contracted for, nor delete them to limit coverage. *Cyprus*, 74 P.3d at 299.

■ Further, courts should read the provisions of an insurance policy as a whole, rather than reading them in isolation. *Id.* Accordingly, we construe the policy so that all provisions are harmonious and none is rendered meaningless. *Progressive Specialty*, 148 P.3d at 474. Nevertheless, if provisions are ambiguous, they are construed in favor of providing coverage to the insured. *Cyprus*, 74 P.3d at 299.

■ When an underlying complaint is filed against an insured with claims that may fall within the coverage of the insured's policy, the insurer has a duty to defend. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 (Colo.1991). To determine whether this duty exists, we are limited to the four corners of the underlying complaint. *Cyprus*, 74 P.3d at 299; *Hecla*, 811 P.2d at 1089. The duty to defend is broader than the duty to indemnify, and where no duty to defend exists, it follows there can be no duty to indemnify. *Cyprus*, 74 P.3d at 300.

## III. Sullivan's Contentions

In granting summary judgment for Fire Insurance, the district court relied on *Bentley*, where a division of this court ruled in favor of Fire Insurance on very similar facts and virtually identical issues to those presented here.

Nevertheless, Sullivan contends that *Bentley* does not control here; that, in any event, it was wrongly decided and we should choose not to follow it; and that, contrary to *Bentley*, we should conclude that Fire Insurance had a duty to defend him in the underlying civil action. Specifically, Sullivan contends the policy provisions that purport to extend coverage to claims for invasion of privacy, but exclude coverage for intentional conduct are inconsistent, and therefore, the policy is ambiguous and should be construed to grant coverage to him. He also claims that a

contrary result would render coverage illusory and would be inconsistent with his reasonable expectations.

Contrary to Sullivan's contentions, we conclude that *Bentley* is directly applicable here; that the division's opinion in *Bentley* is persuasive and dispositive of Sullivan's claims; and that, accordingly, the district court did not err in granting summary judgment for Fire Insurance.

## A.  The *Bentley* Decision

In *Bentley*, the victim alleged that Bentley, the insured, tape-recorded a sexual encounter without her consent and played the tape recording to third parties.  953 P.2d at 1299. The victim's complaint alleged negligent and intentional invasion of privacy, as well as claims for unlawful interception of oral communications and conspiracy.  *Id.* There, as here, the insurer, Fire Insurance, provided a defense under a reservation of rights and, ultimately, the insured and the victim settled the underlying action.  *Id.*

Fire Insurance, as it did here, filed an action for declaratory judgment asserting that it had no duty to defend the insured. *Id.* The insured counterclaimed for breach of contract and bad faith breach of the insurance policy.  *Id.* The policy at issue in *Bentley* was exactly the same as the policy at issue here, with the same relevant provisions. *Id.* at 1300–01.  Both parties moved for summary judgment, *id.* at 1299, and the district court granted summary judgment in favor of Fire Insurance on all the claims except the conspiracy claim.  *Id.*

Similar to Sullivan's contention here, on appeal Bentley contended that the provision for coverage for invasion of privacy and the provision excluding coverage for intentional conduct rendered the policy ambiguous, and, therefore, Fire Insurance had a duty to defend.  *Id.* at 1301.  A division of this court held that the provisions of the policy were not ambiguous, and, thus, there was no duty to defend on the invasion of privacy claims. *Id.* at 1302.

The division first addressed and rejected Bentley's contention that if Fire Insurance failed to provide a defense, the policy's cover-age would be illusory.  *Id.* at 1301.  Relying on the supreme court's opinion in *Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371 (Colo. 1997) (*Ozer*), the division noted that "a reckless disregard mental state has also been held as sufficient" in Colorado for some invasion of privacy torts.  *Bentley*, 953 P.2d at 1302 (acknowledging that *Ozer* recognized the tort claim for invasion of privacy based on unreasonable publicity given to one's private life, which requires the mental state of reckless disregard).  Therefore, the division concluded "the policy here does provide coverage for some claims of invasion of privacy, but specifically excludes those based on intentional conduct."  *Id.* Accordingly, the division rejected the insured's contention that the policy was ambiguous or illusory, *id.* and concluded that there was no duty to defend based on the invasion of privacy claim.

## B.  Application of *Bentley*

Although we are not bound by prior decisions of other divisions of this court, we conclude that *Bentley* is persuasive and dispositive here.  *See In re Estate of Becker*, 32 P.3d 557, 563 (Colo.App.2000)("[W]hile divisions of this court generally have given considerable deference to the decisions of other panels, one panel is not obligated to follow the precedent established by another."), *aff'd sub nom.  In re Estate of DeWitt*, 54 P.3d 849 (Colo.2002).

First, applying *Ozer*, we agree with the division's rationale in *Bentley* that a policy covering invasion of privacy torts, but specifically excluding coverage for intentional acts is not inconsistent, and therefore, does not render the coverage illusory.  *Ozer* listed the four different ways the right of privacy may be invaded: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public.  *Ozer*, 940 P.2d at 377.  In *Ozer*, the supreme court then explained that a tort for invasion of privacy in the nature of unreasonable publicity given to one's private life in Colorado requires that the defendant act "with reckless disregard of the private na-

ture of the fact or facts disclosed." *Id.* (emphasis added); *see* CJI–Civ. 4th 28:5 n. 8 (2008) (citing *Ozer* and noting that "the requirement of 'reckless disregard' for the private nature of the disclosure is met when the defendant 'knew or should have known that the fact or facts disclosed were private in nature' "). Here, and in *Bentley,* by contrast, the victims alleged intentional torts against the insureds. Thus, in our view, the division in *Bentley* properly concluded, as we do here, that the Fire Insurance policy provisions were neither inconsistent nor illusory.

■ Furthermore, as in *Bentley,* the victim's underlying complaint here alleged only intentional conduct in the nature of unreasonable intrusion upon the seclusion of the victim. Regardless of how the claims were framed, the complaint was based on Sullivan's alleged intentional drugging and sexual assault of the victim. *See Doe v. High–Tech Institute, Inc.,* 972 P.2d 1060, 1065–67 (Colo. App.1998) (specifically recognizing intrusion upon seclusion form of invasion of privacy as an intentional tort in Colorado). Thus, because the underlying complaint alleges only intentional conduct, coverage for such conduct is unambiguously excluded under the policy, and Fire Insurance did not have a duty to defend Sullivan against the victim's claims. *See Bentley,* 953 P.2d at 1302; *see also Cyprus,* 74 P.3d at 299.

In addition, and contrary to Sullivan's contention, *Denver Publishing Co. v. Bueno,* 54 P.3d 893 (Colo.2002), does not compel a contrary result or undercut the persuasive rationale of *Bentley.* In *Bueno,* the Colorado Supreme Court declined to recognize the tort of invasion of privacy based on publicity that unreasonably places another in a false light. *Id.* at 894. However, the court made clear that the false light version of invasion of privacy, where it is recognized (like the version based on public disclosure of private facts), generally requires recklessness as its mental state, not intentional conduct. *See id.* at 899. *Bueno* also explicitly acknowledged that "three of [the] four invasion of privacy categories are viable tort claims in Colorado," *id.* at 896–97, including public disclosure of private facts, thus reaffirming the court's earlier opinion in *Ozer. Id.* at 897. Conse-

quently, the insurance policy here, even in light of *Bueno,* could still cover the tort of public disclosure of private facts (where recklessness is the mental state) and exclude the intentional invasion of privacy tort of intrusion upon seclusion alleged by the victim. *See Doe,* 972 P.2d at 1067. Therefore, we are not persuaded by Sullivan's contention that *Bueno* renders the rationale of *Bentley* inapposite.

In sum, we agree with the division's reasoning in *Bentley* and conclude it is applicable here. Accordingly, we further conclude the district court did not err by relying on *Bentley* in entering summary judgment for Fire Insurance.

### C. Other Jurisdictions

Sullivan also contends we should decline to follow *Bentley* because the majority of other jurisdictions addressing similar coverage issues have concluded the insurer does have a duty to defend. We disagree.

While courts in some jurisdictions have concluded policies seeming to provide coverage for a possibly intentional tort, yet excluding coverage for intentional conduct, are ambiguous, decisions in other jurisdictions are consistent with the result and reasoning in *Bentley.* Compare, e.g., *Titan Indem. Co. v. Riley,* 641 So.2d 766 (Ala.1994); *Bailer v. Erie Ins. Exch.,* 344 Md. 515, 687 A.2d 1375 (1997); *and Knowles v. United Services Auto. Ass'n,* 113 N.M. 703, 832 P.2d 394, 397 (1992)(noting specifically that the "cases are split as to whether or not, as a matter of law, such clauses are ambiguous"), *with Coleman v. Sch. Bd.,* 418 F.3d 511 (5th Cir.2005); *Fuisz v. Selective Ins. Co.,* 61 F.3d 238 (4th Cir.1995); *and SBC Holdings, Inc. v. Travelers Cas. & Sur. Co.,* 374 Ill.App.3d 1, 313 Ill.Dec. 250, 872 N.E.2d 10, 12 (2007).

Moreover, as noted by Fire Insurance in its answer brief, the cases cited by Sullivan to support his contention that we should decline to follow *Bentley* are all distinguishable for one or more reasons. *See, e.g., Purrelli v. State Farm Fire & Cas. Co.,* 698 So.2d 618, 620 (Fla.Dist.Ct.App.1997) (invasion of privacy only actionable in Florida if done intentionally); *South Carolina State*

*Budget & Control Bd. v. Prince*, 304 S.C. 241, 403 S.E.2d 643, 647–48 (1991) ("the policy does not contain an intentional act exclusion, but rather, it definitively purports to cover certain intentional acts").

More important, we simply do not find the cases relied on by Sullivan convincing or persuasive. Indeed, in *Bailer v. Erie Insurance Exchange*, one of the primary cases cited by Sullivan, we find the dissent far more persuasive than the majority opinion and more consistent with Colorado law, as articulated in *Bentley*. In *Bailer*, similar to the situation here and in *Bentley*, the insured parties claimed the insurance company had a duty to defend them against a claim of invasion of privacy. 687 A.2d at 1376. The policy provisions at issue there were similar (although not identical) to the policy provisions at issue here. *Id.* at 1377–78.

We first note that the majority opinion in *Bailer* itself recognized that (unlike here and in *Bentley*), the insurer in that case "has not briefed whether forms of invasion of privacy, other than [intrusion upon seclusion] . . . can be committed unintentionally, and [the insurer] does not argue that its policy, properly construed, insures against liability for some other form of that tort. Consequently, we express no opinion on such a possible construction." *Id.* at 1381. Thus, the issue, as framed in *Bailer*, is not even the same issue addressed in *Bentley* or in this appeal.

Although the majority opinion in *Bailer* found the policy provisions at issue there were inconsistent and thus ruled coverage should be extended to the alleged tort, the dissent persuasively rejected the insured's contention (similar to Sullivan's here) that a reasonable person would have understood the policy to cover all invasions of privacy:

> A better way to construe this insurance policy is to assume the purchaser read the policy and recognized that it meant what it plainly said: coverage is available for invasions of privacy, bodily injuries, defamations of character, etc., except when they were committed intentionally; thus there was no coverage when the injury was "expected or intended." The express language of the policy is a better aid to construction than assumptions about a rea-

sonable person who is ignorant of the variations of invasion of privacy, some of which may be committed unintentionally. . . .

*Id.* at 1388 (Chasanow, J., dissenting). The dissent also pointed out, consistent with *Bentley's* analysis of Colorado law, that courts in Maryland had never held that all invasion of privacy torts were exclusively intentional. *Id.* Finally, the dissent concluded:

> The majority opinion is not simply interpreting what this insurance contract covers; it is interpreting what the majority thinks the insurance contract ought to cover. We must be cautious in rewriting insurance contracts by nullifying a material exclusion. Even though when construing statutes the Court has sometimes disregarded express language in order to interpret what the Court thinks the legislature intended, we should not rewrite insurance contracts based on what we think the insured might have intended.

*Id.* at 1390 (citation omitted). Likewise, we will not rewrite Sullivan's policy with Fire Insurance, *see Cyprus*, 74 P.3d at 299, where the policy unambiguously excludes coverage for invasion of privacy based on intentional conduct. *See Progressive Specialty*, 148 P.3d at 474 (we construe insurance policies so that all provisions are harmonious and none is rendered meaningless); *see also Lincoln General Ins. Co. v. Bailey*, 224 P.3d 336, 339, 2009 WL 1331094 (Colo.App. No. 08CA0371, May 14, 2009)(doctrine of reasonable expectations is an interpretative tool used to resolve an ambiguity, and where an exclusion in a policy is unambiguous, the doctrine does not apply).

Given our conclusion that *Bentley* was correctly decided and is applicable here, we discern nothing in the out-of-state cases relied on by Sullivan that would compel us to reach a contrary result.

## IV. Public Policy

Both parties make extensive arguments based on public policy. On the one hand, Fire Insurance contends that extending coverage to Sullivan's conduct here would run afoul of longstanding public policy in Colorado not to allow or promote coverage for

harmful, wanton, or malicious intentional torts. On the other hand, Sullivan contends that a result granting coverage here would not run afoul of public policy.

Because we have concluded, based on *Bentley*, that the policy language here unambiguously excludes coverage for the torts alleged by the victim in her complaint, we need not address in detail the parties' arguments regarding public policy. Nonetheless, we note that the Colorado Supreme Court has specifically stated that "[t]he purpose of the exclusion of intentional injuries from coverage is to prevent extending to the insured a license to commit harmful, wanton or malicious acts. This purpose serves a valid public policy." *Am. Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 957 (Colo.1991) (citations omitted).

The judgment is affirmed.

Judge BOORAS and Judge ROTHENBERG * concur.